Judge Ewing
delivered the Opinion of the Court.
Moore contracted to deliver to Payne, at Monday’s ferry, on the Kentucky river, for transportation to the southern market, one thousand sacks of good, sound, merchantable corn, in sacks of two bushels each, for sixty one cents per sack. One thousand and eighteen sacks were delivered, and received and transported to New Orleans, and sold by Payne to one Walsh, at one dollar and twenty five cents per sack.
Upon inspecting the sacks, it was discovered that the corn in three hundred and forty seven sacks was so rotten and spoiled that Walsh declined the purchase of the whole, and the rotten corn was sold afterwards by Payne for fifty cents, and the residue" for one dollar twelve and a half cents per sack.
Payne, upon his return, filed his bill against Moore, charging fraud in the sale of the corn, and enjoining a judgment that had been recovered against him, upon a note for a part of the price.
All objections to the jurisdiction of the Chancellor was waived by the agreement of the parties, and the case submitted, to be tried upon its merits.
The Chancellor determined that fraud had been prac-tised in the sale of the corn, and directed an inquiry before a jury, to ascertain the amount of damages.
Sale of corn, in ICen. for exportation; thepurcha ser takes it to the destined market, ihere sellsTu but a portion of it being found rotten and unsound, the whole is re-again'for much less: held, ^hichthepurcha ser may recover, bL vender in ICy! ““““j betso ex" ev the difference between the two sales at N. O.— He cannot recov er the profit he would have realized on the rotten part, if it had been good; still less can he recover what he lost by the return of the sound part. Nor shall the amount of damages be restricted to the difference between the value of the damaged corn,and the sale price, at the place of the purchase; but shall cover all the expenses incident to the exportation — including freight, commissions, port charges Sic. at the usual rates; from the aggregate of which, the sum produced by the sale must be de•ducted. As to the sound com, no damages can be recovered, tho the purchaser’s profits may have been reduced in t¿f same cargo, part sound?11 WaS UB"
*381 The jury, under the instructions of the Court, found in damages not only the difference between the price for which the defective corn was sold, and the highest market price at New Orleans, which was one dollar twenty five cents, but also the difference between the price at which the residue was sold, and the highest price for sound corn at the same place — amounting, in the aggregate, to the sum of three hundred and forty four dollars twelve cents.
This finding was promptly set aside by the Court, and a new inquiry awarded. Upon the second inquiry, at a ^ J r . 1 „ . subsequent term, the jury, under a different set of instructions from the Court, as to the criterion, found damages to the amount of one hundred and fifty dollars. — ■ And, upon the motion of the complainant’s counsel, the Court set aside the last finding, and reinstated the former, and applied a part of it to the extinguishment of the judgment at law against the complainant, for the residue of the price unpaid, and rendered a decree against Moore for the balance. From this decree, Moore has appealed , . ’ ■ rr to this Court.
We take it that, under the agreement of the parties, the Chancellor has complete jurisdiction of the whole subject, and may exercise the same powers over it as if jurisdiction had been conferred upon him by the rules of law. If so, he may regard or disregard either finding of the jury, and render a decree upon the whole record, as may seem to him equitable.
Upon a minute scrutiny of the record, we would remark, that there is great contrariety in the evidence, and it is not absolutely clear that fraud has been practiced. But concluding, upon the whole case, that it was, the question occurs — what damages should be given 1 or what criterion should be adopted for their ascertainment ?
We do not believe that the complainant, in good conscience, is entitled to a decree for the amount of his loss on the speculation in the southern market. That criterion might be uncertain and variable, dependent upon the port at which he might elect to stop and make sale, of which the vendor might have no knowledge at *382 the time of the sale, and over whose election he could exercise no control. Besides, such a rule would hold out temptations to carelessness and the want of due vigilance and caution, on the part of the exporter, in the preservation of the article purchased, in its transportation to market; and might operate oppressively on the , , 7 ° ,c . rr . , ", vendor, whose commodity, thougn not entirely tree from ¿efects ^hen delivered, might, bv inattention and vari-7 ® 7 " ous minute injuries on the way, which might not be susceptible of proof, be entirely spoiled, and rendered unmarketable, and of little or no value at the foreign port. Much less do we believe that the complainant is entitled to a decree for the difference in the sale and resale of the residue of the sacks, upon the ground, as alleged in his bill, that the part that was spoiled had injured the credit of the whole load, or upon any other ground relied on. The same imaginary, speculative, reason might, with equal force, be set up and applied to the other boat load taken down by Payne, or to all the corn that he took down that season, though he had taken down a half dozen boat loads. And upon the same ground, and upon like reason, Moore might be made responsible for the difference in the price obtained, and that at which, per possibility, he might have sold.
And so, if Moore had sold only twenty sacks of com which turned out to be rotten when they arrived at market, he might be burthened, not only with all the damages which his vendee had sustained on the twenty sacks, but also with the whole loss of a speculation, which he might, or might not, have realized by the sale of all the other sacks, and thereby might be subjected to some twenty or fifty times the value of the article sold.
A damage of this kind, we conceive, is too remote, contingent and uncertain to be taken into the estimate. Besides, we cannot say that Walsh declined the purchase of the whole for the reason only that a part was unsound, or that he would have purchased the residue alone, if he had never seen nor heard of the part that was unsound. And if we could, we cannot say that, that alone caused the depression in the price of the residue, or that it would have commanded no more, or was *383 sold for the best price that could be obtained. These are matters of speculation and conjecture, upon which we cannot base a decree.
But, while we reject the criterion adopted by the jury, in the first inquiry, we cannot sanction the rule, as applicable to this case, that only the difference in value between sound corn and the unsound corn, sold at the place of delivery, is the proper and.only criterion.
The com was purchased for transportation to the southern market, and this was well known to the defendant at the time of the sale. Payne, relying upon the representations of Moore, that the corn was sound, was induced to make the purchase, and to incur the costs of transportation. Those costs were superinduced by the purchase, and would not have been incurred had it been known to him that the corn was unsound, and would not bear transportation to market. He has, therefore, been damaged to the extent of these expenditures, in the same manner that he was damaged by his expenditures in paying the consideration; and the one as well as the other, he has an equitable right to have refunded. He has disbursed both, in consequence of his purchase, and in the accomplishment of the object of his purchase, viz. a sale in the southern market, and will have actually lost that amount, unless it be refunded to him, and, to that extent, has been endamaged. But as he sold and received fifty cents on each sack for the damaged corn, he has been already reimbursed that amount, which should be subtracted from the amount of his expenditures.
This rule accords nearer than any other with the equitable rule, adopted in the rescission of contracts, of placing the parties, as near as may be, in statu quo. It is applied, at least, as to the damaged corn, in the sale-of which only the fraud is complained of. In a rescission of the contract as to the defective corn, the complainant would have a right to be reimbursed all his actual expenditures. But in that event, the corn would have to be restored to the vendor. And as it could not be reshipped, to be tendered back at the place of delivery, or left at the port undisposed of, without evident *384 injury to him, it was proper for the vendee to sell it for the best price it would command — holding himself accountable for the price received, for the use of the vendor, or to be applied towards the extinguishment of its equivalent amount of his disbursements.
It is true, as a general rule of equity, that a contract will not be rescinded in part. But the complainant has not asked a total rescission, but indemnity only for the damage he has sustained by the fraud in the sale of the unsound corn; and jurisdiction has been yielded, by the agreement, as we understand it, to determine the case, as presented, upon equitable principles. Besides: that rule, in the present case, would give to the party guilty of fraud, the benefit of the speculation of the vendee, on the sound corn, which would discourage enterprize, and in its tendency hold out temptations to fraud. In this case, the contract is not sought to be rescinded, nor is it rescinded ; but the equitable rule adopted by the Chancellor, in the case of rescission, applied, as the best mode of doing equal justice to the parties.
Adopting this rule, the price given for the damaged corn, amounted to two hundred and eleven dollars sixty seven cents; the price of transportation, at thirty seven and a half cents per sack, proven to have been the usual price of freight to New Orleans, amounts to one hundred and thirty dollars eleven and a half cents. The price of drayage, according to the proof, amounted to about six dollars and seventy five cents, and the commissions for selling to four dollars thirty three and three fourth cents, which several sums, in the aggregate, amount to $>352 86£ cents; from which deduct $¡173.50, the price obtained for the unsound corn, and it leaves $¡179.36^; for which latter amount only, the injunction against the judgment at law should have been perpetuated, as of the day when the note fell due, and dissolved as to the residue, with damages.
It is, therefore, the opinion of the Court, that the decree of the Circuit Court be reversed, and cause remanded, that a decree may be rendered according to this opinion.