CASE 77—PETITION—OCTOBER 7.

# S. Barker & Co. vs. Mann, Bennett & Co.

APPEAL FROM JEFFERSON CIRCUIT COURT.

1. Each partner must be presumed to be the agent, and authorized to act for the others, and the firm is bound by his acts relative to their business, whatever may be the private arrangement between them and their responsibilities to each other for a violation thereof.

2. A firm having sold goods and delivered the invoice to the purchaser, and received his acceptance at thirty days in payment, the goods being then separated from the seller's other stock and packed, the contract was closed, and the title to the goods vested in the pur-

S. Barker & Co. vs. Mann, Bennett & Co.

chaser, subject to the seller's lien *in transitu*, or to be retained, and the contract abandoned for insolvency of the purchaser.

The seller having refused to deliver the goods because of the dissatisfaction of the member of the firm who had charge of its credits, and was absent at the time of the delivery of the invoice and receipt of the acceptance, the seller is liable to the purchaser in damages.

3. The sellers having promptly notified the purchaser of their intention to abandon the contract, and no reason being assigned why the purchaser might not have supplied the same articles from other venders in the same market within a few days, the purchaser cannot recover anything on account of loss of profits on a resale in another market.

4. Had the purchaser replaced the same articles by purchase from others in the same market, his necessary expenses, together with his time and trouble, and any advance in the price of such goods, would have been elements making up his damages; or, had the sellers been informed when they sold the goods that the purchaser had already contracted them away, and was purchasing with a view of compliance, any damage to the purchaser resulting by their non-compliance might be regarded as fully within the contemplation of the parties; but not so as to future prospective sales, then wholly uncertain and unknown.

BARRET & ROBERTS,                                For Appellants,
                    CITED—
*Sedgwick on Damages, p.* 82.
*Parsons on Contracts, p.* 458.
*Story on Sales, p.* 425.

BULLOCK & ANDERSON,                          For Appellees,
                    CITED—
1 *Parsons on Contracts,* 432.
9 *Exch.,* 341; *Hadley vs. Baxendale.*
20 *Eng. Law and Eq.,* 410; *Waters vs. Towers.*
1 *Starkie,* 504; *Bridge vs. Wain.*
18 *C. B. ( U. S.),* 445; *Bevins vs. Hutchinson.*
3 *Barbour's S. C. Rep.,* 424; *Freeman vs. Clute.*
16 *N. Y.,* 489; *Griffin vs. Colver.*
14 *B. Mon.,* 116; *Thompson vs. Jackson, &c.*

S. Barker & Co. vs. Mann, Bennett & Co.

CHIEF JUSTICE WILLIAMS DELIVERED THE OPINION OF THE COURT:

Appellants, merchants at Louisville, Kentucky, sold to appellees, merchants at Brownsville, Tennessee, a bill of goods, and received their acceptance at thirty days, payable at Louisville, delivered the invoice of the goods, with a receipt for the amount thereof in acceptance at thirty days, and received the acceptance November 17, 1868. The goods were to be shipped by the Southern Express to Brownsville; but instead of doing so, appellants, the next day, wrote to appellees that their Mr. Middleton, the partner who had chage of their credits, was out at the time the invoice was delivered and the acceptance received, and supposing the bill was to be paid in cash, he was dissatisfied; hence, they returned the acceptance and retained the goods, but would still ship them per express, to be paid on delivery.

It appears that Mann, the purchaser of Mann, Bennett & Co., had left the city the same day of the delivery of the invoice, for his home.

Whatever may have been the understanding of the parties' when the goods were being selected, they were competent to change the terms of the sale at any time; and when one of the partners of S. Barker & Co. received the thirty days' acceptance, and delivered the invoice, the goods then being separated from their other stock and packed, it was a closed contract, and the title of the goods vested in appellees, subject to appellants' lien *in transitu,* or subject to be retained, and the contract and sale abandoned for insolvency of the purchasers. But appellants give no such reason in their letter, it being solely put upon the dissatisfaction of one of the partners.

It is not charged, nor attempted to be proved, that Mann, Bennett & Co. were insolvent. It is alleged,

however, that appellees' references were not satisfactory. These, however, were given a day or so before the delivery of the invoice, which was after appellants had taken means to be informed.

Whatever may be the private arrangement as to the individual partners among themselves, and whatever may be their responsibilities to each other for a violation thereof, as to third parties and the world generally, each partner is presumed to be the agent, and authorized to act for the others, and the firm is bound by his acts relative to their business.

In this suit by appellees against appellants, for damages for the non-delivery of the goods, the most difficult question is as to the measure of damages. Whether the criterion be the market value of the goods at Louisville on the day they should have been delivered, or whether what they could have been sold for by retail at Brownsville when they should reasonably have arived, there can be no doubt but that Louisville was the place of delivery, and that all the expense and risk of transportation was on the purchaser.

In *Moore vs. Payne*, 7 *Dana*, 382, on a contract by Moore to deliver to Payne, at Munday's Ferry, on the Kentucky river, for transportation to the Southern market, one thousand sacks of good, sound, merchantable corn, of two bushels each, for fifty-one cents per sack, the corn being transported to New Orleans and sold at one dollar and twenty-five cents per sack, but, upon inspection, three hundred and forty-seven sacks were so rotten and spoiled that the purchaser declined the whole purchase, when the sound corn was afterwards sold at one dollar and twelve cents per sack, and the rotten at fifty cents.

Upon a litigation between Payne and Moore, a history of which need not be given, this court held, that

as " the corn was purchased for transportation to the Southern market, and this well known to defendant at the time of the sale, Payne, relying upon the representation of Moore that the corn was sound, was induced to make the purchase, and to incur the costs of transportation. Those costs were superinduced by the purchase, and would not have been incurred had it been known to him that the corn was unsound."

But they say, " We do not believe that the complainant, in good conscience, is entitled to a decree for the amount of his loss on the speculation in the Southern market; that criterion might be uncertain and variable;" and after giving various reasons therefor, they say: " Much less do we believe that the complainant is entitled to a decree for the difference in the sale and resale of the residue of the sacks, upon the ground, as alleged in the bill, that the part that was spoiled had injured the credit of the whole load, or upon any other ground relied on." And again it said: "A damage of this kind, we conceive, is too remote, contingent, and uncertain, to be taken into estimate. Besides, we cannot say that Walsh declined the purchase of the whole, for the reason *only* that a part was unsound, or that he would have purchased the residue *alone* if he had never seen or heard of the part that was unsound; and if we could, we cannot say that that alone caused the depression in the price of the residue, or that it would have commanded more, or was sold for the best price that could be obtained. These are matters of speculation and conjecture upon which we cannot base a decree."

This, though by agreement an equity case, was, as the court said, to be settled according to legal principles. If profits were disallowed when the article was

purchased, and so known to the seller, for the Southern market, and transported and actually sold there for an advance, but the sale and profit lost because the article was not merchantable, and not such as was sold, how much more certainly should speculative profits be refused when the article is not delivered and no money advanced, merely because the witnesses were of opinion the goods described in the invoice could have been sold at Brownsville at an advance of from fifty to seventy-five per cent., and that, too, as is evident, by retail?

The contingency of safe and speedy arrival, and then speedy sales for cash, or if not for money, then to solvent men who would certainly pay, were all involved in this advance value of the goods, and makes the whole criterion of damages speculative and uncertain. This is not like the sale of scarlet cuttings sold to be transported to a far distant country, as China is from London, and when arrived found not to be the article sold and purchased, but another, without value in that market. This was a fraud, and because of the distance and time, it could not be supplied from other venders ; hence the value of the article in the Chinese market was allowed in *Bridge vs. Wain* (1 *Starkie's R.*, 410) ; besides, it may be inferred in that case that the goods had been paid for ; and this is regarded as important in all the cases, much stress being laid on the deprivation of the use of his money by the injured party.

It is still more widely different from the case of *Borries vs. Hutchens* (18 *Common Bench N. S.*, or 114 *Eng. Com. Law R.*, 460), in which the defendant sold to plaintiff, with a full knowledge that he had already contracted it to another and foreign purchaser, and that it was to be shipped under said contract, seventy-five tons of caustic soda, which was to be delivered in equal quantities in

the months of June, July, and August, but none of which was delivered until September, and then only twenty-six tons; at which time the shipment to St. Petersburg from England was both more difficult and expensive, and the article of less market value there, by reason of which the plaintiff not only lost the sale, but had to pay damages for not complying; therefore, he was permitted to recover these damages and the increased expense of transportation.

The St. Petersburg purchaser having also resold, to be delivered at a future time, which he was also prevented doing because of the defendant's failure, and whereby he had a still larger sum to pay as damages; but as this latter sale was unknown to and not contemplated by the defendant, he was not held responsible therefor; beside, there is a material distinction in a contract for future delivery of an article which has to be manufactured or obtained, and which is not daily to be had in market, and a sale of such articles as may be had at any time from other venders in the same market. The caustic soda was an article belonging to the former class.

In New York, on contracts for future delivery at a given time of machinery, it is the reasonable rents of the machinery, houses, &c., and not the profits which could be made by operating the machinery, which is regarded as the criterion of damages for a non-delivery according to contract. (*Freeman vs. Clute*, 3 *Bar. S. C. R.*, 424; *Griffin vs. Colver*, 16 *N. Y. R.*, 489.)

In this case appellants promptly informed the appellees of their intention to abandon the sale, and there is no reason assigned or appearing, why they could not supply the same articles within a few days from other vendors in the Louisville market. Had they done so, their necessary expense, together with their time and

trouble, and any possible advance in the price of such goods at Louisville, which they would have had to pay, should be regarded as elements making up their damages. Or had the appellants been informed when they sold the goods that the purchasers had already contracted them away, and was purchasing with a view of compliance, any damage to the purchaser by their non-compliance might be regarded as fully within the contemplation of the parties, but not so, as to future prospective sales, then wholly uncertain and unknown.

It is difficult to lay down any universal rule; for each case must at last, to a great extent, depend upon its own peculiar facts. But when the damages are certain and easily determined, and such as may reasonably be inferred to have been contemplated by the parties, and not merely speculative and contingent, a criterion just and reasonable is arrived at.

The case of *Thompson vs. Jackson, Owsley & Co.* (14 *B. Mon.*, 114) belonged to that class of contracts where one party employs another to do certain work, as the building of a house, the erection of a bridge, or making an engine or other machinery, or, as in said case, the slaughtering a given number of hogs, in which class of cases the failure by the employer to have the work done renders him liable to the undertaker for the net profits of such a job over and above the expense and labor of doing it. But here, too, the criterion is certain and easily ascertained, and not merely speculative and contingent on future sales and market prices, and other contingencies liable to happen.

The fifth instruction given in this case was erroneous, and greatly to appellant's prejudice; and the damages assessed being about fifty per cent. over the invoice price, was adopted as the speculative profits which it

was supposed appellees could have made on a resale of the goods at Brownsville.

Wherefore, the judgment is reversed, with directions for a new trial and further proceedings consistent herewith.