Bluegrass Cordage Co. v. Luthy & Co.

---

CASE 92—PETITION ORDINARY—JANUARY 18.

# Bluegrass Cordage Co. v. Luthy & Co.

APPEAL FROM SCOTT CIRCUIT COURT.

| 98 | 583 |
| 109 | 420 |
| 98 | 583 |
| e113 | 381 |
| 98 | 583 |
| 125 | 712 |
| 98 | 583 |
| f130 | 340 |
| 98 | 583 |
| 138 | 391 |

1. DELAY OF PRINCIPAL TO REPUDIATE CONTRACT MADE BY AGENT.—Although a contract made by an agent on behalf of his principal for the sale and delivery of personal property may have been conditioned upon the approval of the principal, yet the contract having been submitted to the principal on the 9th day of May and not repudiated until the 21st day of May it became binding upon the principal.

2. SALES OF PERSONAL PROPERTY—MEASURE OF DAMAGES FOR FAILURE TO DELIVER.—While in the sale of ordinary articles of merchandise which can be purchased in the same or a convenient market the measure of damages for a failure to deliver is the difference between the contract price and the market value of

the same goods at the time and place of delivery, yet in the sale of manufactured articles which while ordinarily found on sale yet in the particular case can not be found or purchased, the damages may be measured by expected profits where such profits were fairly within the contemplation of both parties.

This rule applied in this case to the breach of a contract for the sale and delivery of hemp twine, the court properly instructing the jury that if by the use of reasonable diligence plaintiffs were unable to purchase twine of the same character and description in the market, and the defendants knew at the time of the purchase by plaintiffs that they purchased the same with a view to a resale, and the profits anticipated thereon were in the contemplation of both parties the motive which induced plaintiffs to make the purchase, then the measure of damages is the difference between the contract price of this twine, plus the freight thereon, and the price at which it could have been sold by plaintiffs at their place of business.

VICTOR F. BRADLEY AND THOMAS S. GAINES FOR APPELLANT.

1. The question as to whether or not the contract was a conditional one was one that should have been submitted to the jury, as was also the question as to whether or not the defendant had agreed to ratify the contract made by Fleming.

2. The measure of damages is not changed by reason of the fact that the goods could not be purchased elsewhere in the market, and the court erred in so instructing the jury.

3. For a failure to deliver goods under a contract of sale the measure of damages is the difference between the contract price and the price at which the goods could have been bought in the market at the time of the breach. (Miles v. Miller, 12 Bush, 135; Barker v. Mann, 5 Bush, 175; Yoder v. Allen, 2 Bibb, 338; Cole v. Ross, 9 B. M., 394; 14 Ky. Law Rep., 807; Mullen & Crigler v. Hume & Co., 15 Ky. Law Rep.; Rouse v. Reed, 12 Ky. Law Rep., 843; Hay & Sweeney v. Williams, 8 Ky. Law Rep., 434; Denny v. Marksbury, 15 Ky. Law Rep.)

4. The court erred in refusing to allow defendant to prove that Fleming was not authorized to make any sale of its twine, except subject to its approval. And also erred in rejecting testimony tending to show that the contract was delivered upon condition that it was to be approved by the home office before it was binding upon defendant. (McFarland v. Sikes, 1 Am. St. Rep., 111; Cake v. Pottsville Bank, 2 Am. St. Rep., 600.)

JAMES F. ASKEW AND OWENS & FINNELL FOR APPELLEE.

1. The instruction to the effect that the silence of defendant was an estoppel, and in law an affirmation of the contract, was proper.

2. The instruction as to the measure of damages correctly states the law. (Miles v. Miller, 12 Bush, 135; Barker & Co. v. Mann. 5 Bush, 674; Moore v. Payne, 7 Dana; Wood's Mayne on Damages, Am. Ed., p. 85; 5 Lawson's Rights, Remedies and Practice, sec. 2621; Tiedeman on Sales, sec. 336; Wakeman v. Wheeler & Wilson Mfg. Co., 54 Am. Rep., 667; Masterson v. Mayer, 7 Hill, 61; s. c., 42 Am. Dec., 38; 1 Sutherland on Damages, 113; Jones v. George, 48 Am. Rep., 287; Calvit v. McFadden, 13 Texas, 326; Sedgwick on Damages (last ed.) 104-122.)

JUDGE GRACE DELIVERED THE OPINION OF THE COURT.

On May 7, 1892, a contract was made between Luthy & Co., wholesale dealers in agricultural implements, machinery and binder twine, doing business at Peoria, Ill., and the Bluegrass Cordage Co., doing business at Georgetown, Ky., manufacturers of hemp binding twine, for the sale by the latter to the former of 100,000 pounds of their manufacture of such twine, at 7½ cents per pound, same to be delivered F. O. B. cars, at Georgetown, by the 10th of June, 1892, to be paid for by September 10, 1892, with some discounts for payments made at an earlier date. This twine was guaranteed to be good merchantable twine, reasonably smooth, to have ample strength to do good work on any binder in good condition.

This contract was in the form of an order by Luthy & Co., signed by Fred Luthy, the president of the corporation, and accepted by the appellants, signed by Wm. Fleming, superintendent, who was then out traveling for his corporation and representing them in their business.

While, by the pleadings, appellant made some question as to the making of this contract, and as to the authority of Fleming to execute same, and while it was claimed that

this contract was only conditional and dependent on the ap
proval of the appellant; and the court, on the trial of the
cause, gave, by reason of some allegations in the answer un-
denied, an instruction to the jury that it was originally con-
ditional, but that, by reason of the submission of same to
the Cordage Company on the 9th day of May, 1892, and their
failure to repudiate it until the 21st of May, 1892, it became
binding on the appellants to all intents and purposes.

The facts upon which the court relied in the making of this
ruling were shown by the admitted correspondence filed in
the case, and this view was fully sustained, as it appeared in
the evidence, by the Cordage Company, that they did not at
any time intend to accept and to fill said contract.

On this state of the case, although there had been issue
tendered on these points, yet the court was quite authorized
to instruct the jury as indicated above.

A trial resulted in a verdict for the appellees for $750, and
from that judgment, after motion for a new trial was over-
ruled, this appeal is prosecuted.

On this appeal the main question is as to the estimate of
the damage to which appellees were entitled for a breach of
this contract by appellant.  On this question of damages
the court instructed the jury, in substance, that if the ap-
pellees, Luthy & Co., could have purchased the twine in
the market, then the damages would only be the difference
between the price so paid and the contract price.

But, by instruction No. 3, the court further said that if,
by the use of reasonable diligence, appellees were unable
to purchase twine of the same character and description in
the market, and if the defendants knew, at the time of pur-
chase by plaintiffs, that they purchased same with a view to
a re-sale, and that the profits anticipated thereon were, in
the contemplation of both parties, the motive which induced

plaintiffs to make the purchase, then the measure of the damages is the difference between the contract price of this twine, plus the freight thereon, and the price at which it could have been sold for by plaintiffs at their place of business, Peoria, Ill., on and after the 21st of May, 1892.

In the introduction of the evidence plaintiffs were allowed to show that they were an old established house in the agricultural implement and binder twine business; that they had for years made sales of far greater amounts of twine than that embraced by this contract; that, at the time of making this contract, they had ten traveling salesmen out on the road selling their goods; that within the short time in which they supposed they would obtain this twine from defendant they had, in fact, sold between three and four thousand pounds of this twine at a price averaging 9.6 cents per pound; that these sales cost them no additional expense, and that they knew, by their former business, that they could easily have sold the whole of this purchase during the season at substantially this price. They laid their damages at $2,000.

Their testimony further showed an advance in the market value of twine as the season progressed. They went into some details to show why this advance was made, as by reason of the efforts of the American Cordage Co. to corner, so to speak, the market on twine, this company having almost the exclusive control of the supply of Sisal and manilla twine and the mixed manufacture of the two materials; that this hemp twine, made by the defendant, was the chief twine that could then be secured and brought in competition with the goods of this American Cordage Co.

They furthermore gave in evidence that, after they were notified on the 21st of May, 1892, by the defendant company that it did not intend to comply with its contract, though

making diligent efforts, they had been unable to purchase any hemp twine such as embraced in their contract.

And this latter proposition must have been believed by the jury, as it was only on this view that they were authorized to make an estimate of the damages along the line of profits indicated by the instructions.

Quite a number of cases are cited in Kentucky where this court held that, on the sale of ordinary articles of merchandise and on non-delivery of same, the measure of damages is the difference, if any, between the contract price and the market value of the same goods at the time and place of delivery as per contract.

This is the doctrine recognized in Moore v. Payne, 7 Dana, 382, as to the sale of a lot of corn for shipment to New Orleans, part only of which was damaged.

In Miles v. Miller, 12 Bush, 135, in reference to the sale of a quantity of slops for feeding cattle, it not being shown that other slops could not have been obtained in the same vicinity.

In the case of Barker & Co. v. Mann, Bennett & Co., 5 Bush, 672, on the sale of a lot of dry goods in Louisville to be shipped south.

Other cases might be found to the same effect. And such is doubtless the general and well-recognized doctrine in Kentucky in that class of cases. These cases, however, all apply to a state of fact where the commodity contracted for was one of general merchandise or traffic, such as it was recognized by the courts could be abundantly purchased in the same market or near by, and in such cases, and chiefly for this reason, they refuse to go into an estimate of profits that might have been made in those cases.

The difference between the contract price for the sale of goods and the market value at the time and place where·

they should have been delivered furnishes an easily ascertained, sure and certain criterion of this damage.    But what shall be said of other contracts not strictly of a commercial character, as of a contract of a carpenter or a mason for building a house?   Is he not as much entitled to any damage he may sustain as one who contracts about commercial products?   And what shall be said even of commodities of manufacture ordinarily found on sale, and yet where, in the particular case, they can not be found or purchased?

Is not the party who has contracted for them, and yet can not obtain them by purchase elsewhere, entitled to his reasonable damage from the party in default?   Is there any difference in principle between the one contract and the other?   Should not every person who, upon a valuable consideration, makes a contract for the purchase of goods, be entitled to his reasonable damage sustained by reason of the non-performance on the part of the seller?

While we do not find a case directly in point in Kentucky, yet we find authors of reputation and courts of other States supporting the view that, where the article purchased is withheld, and where it can not be purchased elsewhere, then, from the very necessity of the case, if any compensation at all is to be made, an estimate of damage may be based on expected profits where it was fairly within the contemplation of both parties that the goods were purchased with a view to a re-sale for profit.

Mr. Lawson, in his work on Rights and Remedies, volume 5, section 2623, says: "Profits are recoverable where their loss is the natural and necessary result of the breach; where, as has been said, their loss results directly from the breach of the contract itself, or is such as might reasonably be supposed to have been in the contemplation of both parties

at the time of making the contract, as the result of non-performance, provided that the profits to be compensated for are such as are capable of being ascertained by the rules of evidence, to a reasonable degree of certainty. * * * But though damages recoverable for a breach of contract include profits which the plaintiff certainly would have realized but for defendant's default, yet speculative or contingent profits are not recoverable. * * * And anticipated profits on the sale of goods purchased will not be allowed in an action against the vendor for failure to deliver the same, where the vendor notified the purchaser promptly of his refusal, and where no reason is assigned why the purchaser could not have bought the same class of goods immediately in the same market."

In this case this reason is clearly shown. Defendants did not have the goods on hand of the sample and in the quantity sold, and defendants had discontinued the manufacture of such goods. The jury found that plaintiff could not, after due diligence, find the goods elsewhere. So all the conditions marked out by the author, wherein an appeal may be made to the profits as an estimate of damage, exist in this case. This view is supported by Mr. Wood's edition of Mayne on Damages. We quote: "There are many cases in which the profit to be made by the bargain is the only thing purchased. In such cases the amount of such profit is strictly the measure of damages." (See page 82.) It is also held that, when the defendants refuse to allow the contract to be executed, the jury should allow the plaintiff as much as the performance of the contract would have benefited him.

"Profits or advantages which are the direct and immediate fruits of the contract, entered into between the parties, are part and parcel of the contract itself, entering into and

constituting a portion of its very elements—something stipulated for—and the right to the enjoyment of which is just as clear and plain as the fulfillment of any other stipulation.

"They are presumed to have been taken into consideration and deliberated upon before the contract was made, and formed perhaps the only inducement to the arrangement."

And again, in a New York case, Taylor v. Bradley, 39 N. Y., 129 [4 Abb. Ct. of App. Dec. 366], it is said: "Profits which would certainly have been realized, but for the defendant's default, are recoverable. * * * It is not an uncertainty as to the value of the benefit or gain to be derived from performance, but an uncertainty or contingency whether such gain or benefit would be derived at all" that precludes the estimate.

We gather, from further examination of this case, that it means to say that, if it is reasonably sure that loss has been sustained, then you may make the inquiry, though the extent of the loss may, in some respects, be uncertain.

In another New York case of Wakeman v. Wheeler & Wilson M'f'g Co., 101 N. Y., 205, the plaintiff was awarded damages on an estimate of the profit he could have made upon the sale of the sewing machines of the manufacture of the defendants, provided they had furnished them to him as per contract.

This is a well-considered case, and there are many expressions in it supporting the claim of plaintiff in this action. It is said therein: "A person violating his contract should not be permitted entirely to escape liability, because the amount of the damages which he has caused is uncertain. It is not true that loss of profit can not be allowed as damages for a breach of contract. Losses sustained and gains prevented are proper elements of damage. Most contracts are

entered into with a view to future profits, and such profits are in contemplation of the parties, and, as far as they can be properly proved, they may form the measure of damage. As they are prospective, they must, to some extent, be uncertain and problematical, and yet, on that account, a person complaining of a breach of contract is not to be deprived of all remedy. It is usually his right to prove the nature of his contract, the circumstances surrounding and following its breach, and the consequences naturally and plainly traceable to it, and then it is for the jury, under proper instruction as to the rules of damages, to determine the compensation to be awarded for the breach."

All these matters, indicated by the court in the case quoted from, are shown to exist in this case.

In Mr. Sedgwick's latest publication it will be found that, under the circumstances of this case, and as set out and submitted in the instructions, an estimate of profit may be made by way of fixing the damage.

Many other cases might be cited in support of the law as laid down by the court below on the trial.

The jury found their verdict on a very conservative basis, and far within the evidence offered by the plaintiffs.

We think the facts of this case clearly distinguish it from those in Kentucky where a different rule for the estimation of damage has been announced.

The judgment must be affirmed.