# G. Armeny, et al., v. The Madson & Buck Company.

## Gen. No. 10,882.

1.  Motion for new trial—*grounds for, how stated.* It is not essential for a party to state specifically his grounds for a new trial where no order has been entered requiring him so to do.

2.  Measure of damages—*for non-delivery of merchandise pursuant to contract.* The usual measure of damages in such a case is the excess, if any, of the market price at the time and place of delivery over the contract price, but this rule does not apply where the article purchased cannot be had in the market, and in such a case the net profits lost through such non-delivery, are recoverable.

3.  Vendee—*duty of, where vendor does not deliver pursuant to contract.* Where goods have been purchased and not delivered by the vendor, it is the duty of the vendee to exercise reasonable diligence to obtain the goods elsewhere, to do all that can reasonably be expected to mitigate the loss and act throughout as a reasonable man of business.

4.  Profits—*how proof of, which constitute an element of damage, may be introduced.* It is competent for a witness to state in a single answer the entire profit which would have been made by a party from the sale of a number of articles of the same kind had they been delivered pursuant to contract, where such answer is not based upon speculation; the defendant in such case having the right upon cross-examination to inquire as to each particular article which might have been sold.

5.  Measure of damages—*proof essential to fix.* Where the measure of damages is the difference between the price to have been paid for an article and that at which it was resold, proof must be made both of such purchase price and of such price of resale.

6.  Depositions—*when, cannot be read upon a subsequent trial between the same parties.* A deposition which has been taken pursuant to a stipulation waiving notice, etc., for use at one trial, cannot be used at a subsequent trial of the same case over the objection of the other party, and this is especially true where such stipulation made by attorneys does not appear to have been authorized by their client.

7.  Instruction—*when insertion of words, " or either of them," are erroneous.* Where the right of the plaintiff to recover upon both of several contracts in suit, is predicated upon his not being in default as to either of them, it is error to instruct the jury that if "plaintiff was not in default in any respect relative to said contracts, *or either of them*," they should award to plaintiff "the net profit that would have been made under any one or all of said contracts."

Action of assumpsit. Appeal from the Superior Court of Cook County; the Hon. Alonzo K. Vickers, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1902. Reversed and remanded. Opinion filed January 19, 1904. Rehearing denied February 13, 1904.

FELSENTHAL & FOREMAN, for appellants.

J. ERB and CYRUS J. WOOD, for appellee.

**Statement by the Court.** This is an appeal from a judgment for $2,149.30 recovered by appellee against appellants as damages for the breach of two alleged contracts by which it is claimed appellants had agreed to sell and deliver to appellant 2,000 dozen gold pens. Appellants are manufacturers of gold pens in New York; appellee is a jobber of gold pens and other articles, doing business in Chicago.

The declaration consists of the common counts and four special counts. The third special count alleges that on April 29, 1896, appellants sold to appellee 1,000 dozen gold pens at $3 per dozen to be delivered in Chicago as wanted by appellee, the last shipment to be made not later than November 14, 1896; that there was a failure to deliver; that at the time of the making of the contract appellee was a dealer in gold pens which appellants well knew; that in reliance on the contract appellee at a great expense by catalogues and other publications advertised for sale said pens to be delivered to it, took orders therefor and sold the same to divers persons; that upon the failure of appellants to deliver, appellee endeavored but was unable to purchase said pens in the market, and could not deliver to the persons to whom it had resold the same; by reason whereof, etc. The fourth special count is the same as the third, except that it declares upon a similar contract between the same parties dated July 27, 1897. Appellants pleaded the general issue.

At the trial it appeared that the first order was for 1,040 dozen pens and had been given in Chicago in the spring of 1896, and the second was for 960 dozen and was given in New York in the spring of 1897; but appellants denied that these were actual orders, or intended as such or accepted by them, and gave proof tending to show that it was the custom of the trade to ascertain from their customers in the spring about what amount of goods they might require during the coming season and take tentative

Armeny v. Madson & Buck Co.

orders therefor, and that. the only real orders were those sent from time to time by appellee to appellants requiring a certain number of pens to be delivered at a certain time. No prices were mentioned for the items comprised in the order given. in 1897, and there were some goods in this order different from those ordered in 1896.    The proof showed a failure by appellants to deliver a considerable quantity of pens under each order, and it tended to show unsuccessful attempts made by appellee to obtain the goods elsewhere.

Appellants assign numerous errors in general language, as for example, " the court erred in admitting improper evidence on behalf of the plaintiff."

MR. JUSTICE STEIN delivered the opinion of the court.

First.    The contention of appellee that the assignments of error are not sufficiently specific is not well taken. Many Illinois cases are cited, but they only hold that it is not enough to assign error; it must also be pointed out and argued in the brief, otherwise it is waived.    In the absence of an order requiring them to do so, it was not necessary for appellants to state any specific grounds for their motion for a new trial, and the failure to state them cannot be urged in the reviewing court.    O. O. & F. R. V. R. R. Co. v. McMath, 91 Ill. 104.

Second.    In connection with the proof that it could not obtain the pens elsewhere, appellee was permitted to show the orders it had received from its customers for the pens not delivered by appellant, and the profits it would have realized if. it had been able to execute the orders.    The usual measure of damages in such a case as this is the excess, if any, of the market price at the time and place of delivery over the contract price; but it is plain and indeed is conceded by counsel for appellants that the rule does not and cannot apply and that profits are recoverable when the article purchased cannot be had in the market when and where it should have been delivered.    Ramsey v. Tully, 12 Ill. App. 463; Loescher v. Deisterberg, 26 Ill. App. 520;

Jordan v. Patterson, 67 Conn. 473; Blue Grass Cordage Co. v. Luthy, 98 Ky. 583; Rahm v. Deig, 121 Ind. 283; Trigg v. Clay, 88 Va. 335; Van Arsdale v. Rundel, 82 Ill. 63; Capen v. Glass Co., 105 Ill. 185, 191; France v. Gaudet, L. R. 6 Q. B. 199; Benjamin on Sales, 6th Am. Ed., pp. 879 and 880; 1 Sutherland on Damages, Ed. of 1882, pp. 91 and 92; 1 Sedgwick on Damages, 8th Ed., sec. 198; 2 Sedgwick on Damages, secs. 739, 740. The foregoing authorities establish that it is the duty of the vendee to exercise reasonable diligence in endeavoring to obtain the goods elsewhere, to do all that can reasonably be expected to mitigate the loss and act throughout as a reasonable man of business; but if notwithstanding the use of reasonable diligence he cannot procure the article in the market, the measure of damages is the actual loss sustained by him, and if he has resold the article purchased to another, he is entitled to recover the difference between the price he agreed to pay and that at which he resold, subject to all proper allowances for expenses of carrying on the business of the vendee and similar items. The presumption is that the price at which the article was resold is its fair value, and that is *prima facie* to be taken as the market price for the purpose of adjusting the damages.

" Profits or advantages which are the direct and immediate fruits of the contract are part and parcel of it, entering into and constituting a portion of its very elements— something stipulated for—and the right to the enjoyment of which is just as plain and clear as the fulfillment of any other stipulation. They are presumed to have been taken into consideration and deliberated upon before the contract was made, and formed, perhaps, the only inducement to the arrangement." Cordage Co. v. Luthy, *supra;* Trigg v. Clay, *supra.*

Appellants knew when they sold the pens to appellee that its intention was to sell them again and at a profit. That is what it was in business for and the object for which it bought them. Appellants must therefore be regarded as having contemplated resales by appellee at a profit and cannot complain at being compelled to make

good to it the loss on the resales if it was unable to supply its customers by buying the goods in the open market.

Third. A witness for appellee, after having testified in detail as to the profits on the resale of some of the items of the order given in 1896, was asked to state and did state the entire profit appellee would have made on the undelivered pens if they had been delivered. The same course was pursued as to the order given in 1897. It is now argued that this was allowing the witness to make a mere guess or estimate wholly speculative in its character. In this contention we cannot concur. The witness based his figures upon the difference between the prices at which appellee had purchased the various items from appellants and those at which it had resold them. There is nothing speculative or in the nature of an estimate about this. He might have given the difference separately as to each item; but the method pursued was a great saving of time. If appellants wanted to go into detail, they could do so on cross-examination.

Fourth. As to a considerable part of the goods ordered of appellants in 1897, there is no proof of the price which appellee was to pay for them. Nevertheless, it was permitted to prove its loss of profits on the resale of these goods. This was error. As we have seen, the measure of damages in this case is the difference between the contract price and the price of resale. If the contract price is not shown, the foundation is lacking for proof of the loss sustained by the vendee. To let him prove it by stating the profits, is giving him full liberty to fix the purchase price he is to pay at any figure whatever.

Fifth. The deposition of a witness taken in a former case between the same parties and involving the same subject-matter was read over the objection and exceptions of appellants. In a proper case this may be done. Doyle v. Wiley, 15 Ill. 577; Wade v. King, 19 Ill. 301; Goodrich v. Hanson, 33 Ill. 499; Pratt v. Kendig, 128 Ill. 292. But this presupposes, as was said in Doyle v. Wiley, *supra*, that "the deposition was taken in strict conformity to the

statute." It does not appear that any notice was given of the taking of the deposition before us, or that a commission issued in that behalf. It begins with the title of the case and shows next what purports to be a stipulation " between the parties to this suit that the testimony of Julius Williams may be reduced to writing and read as evidence upon the trial of said cause without objection, previous notice and the issue of a *dedimus potestatem* having been waived. Present for the complainant, J. Erb, Esq., and C. J. Wood, Esq. For the defendants, Mess. Cunningham, Vogel and Cunningham." The witness was not sworn, " oath being waived by both parties." The signature was also waived, and, of course, there is no certificate of a commissioner. No proof was offered in the case at bar that Messrs. Cunningham, Vogel and Cunningham represented or were the attorneys of appellants in the former suit. The alleged stipulations and waivers are not signed, and even if they were, no authority to do so was shown. And even if the requisite authority had been shown, yet the stipulation while good in the former case did not extend or apply to this one. Town of Carthage v. Buckner, 8 Brad. 152; Travers v. Warner, 13 Brad. 39; Gage v. Bank, 86 Ill. 371. The witness not having been sworn, the deposition was in this case absolutely inadmissible. Had he been sworn, it would still have been error to admit it for want of proof that the attorneys who undertook to act for appellants had the necessary authority. Even with the authority shown, the deposition was still incompetent because not taken in accordance with the statutory requirements, and the stipulation to waive them did not extend to this case. Permitting the deposition to be read constituted material error because it bears directly upon the contested question in the case whether the parties entered into the contracts sued on.

Sixth. At appellee's request the jury were instructed as follows :

" The court instructs the jury that if they believe from the evidence that the plaintiff, The Madson & Buck Com-

pany, and the defendants, Armeny & Marion, entered into certain contracts or agreements by which the defendants were to deliver to the plaintiff certain goods, according to the terms of said contracts, and if they, the jury, further believe from the evidence that the plaintiff was not in default in any respect relative to the said contracts or agreements or either one of them, and the defendants without good and sufficient reason failed to deliver a portion of said goods to the plaintiff according to the terms of said contracts or any of them, and if the jury further believe that the plaintiff ordered said goods for the purpose of reselling the same and that this was known to the defendants, and was in the contemplation of both parties, and if the jury further believe that the plaintiff suffered any loss or damages by reason of the failure of the defendants to deliver said goods, and if the jury further believe that the said goods could have been obtained in the market by the plaintiffs, then it is the duty of the jury in fixing the said damages to take into consideration the expense, if any, that the plaintiff incurred in preparing to dispose of or resell the goods ordered of the defendants; and further, it is the duty of the jury to take into consideration and award to the plaintiff the net profits, if any, which the jury believe that it has been shown beyond speculation or contingency would have been made by the plaintiff under any one or all of said contracts had the said goods been delivered according thereto."

The instruction should not have been given for a number of reasons: (a) While it directed the jury " to award to the plaintiff the net profits" of the resales, it did not require them to find what is properly alleged in the special counts as a condition precedent, and as to which the proof presented a serious conflict, that appellee could not by the exercise of reasonable diligence have obtained in the market the pens which appellants should have delivered but did not.    Unless the proof showed such to be the fact, profits could not be allowed, and the ordinary rule governing the measure of damages would prevail.  (b) To instruct the jury that if they believed " the said goods could have been obtained in the market by the plaintiffs, then in fixing the damages they should consider the expense, if any, that the plaintiffs incurred in preparing to dispose of or resell the

goods," was submitting on issue the reverse of that which as above appears should have been submitted. Moreover, appellees were not entitled to recover the expenses incurred by them "in preparing to resell the goods." The net profits are ascertained by deducting from the gross profits the legitimate business expenses. By this instruction the jury were directed to allow gross profits. (c) There was evidence tending to prove defaults by appellees in respect of the provisions of the contracts requiring payment for the pens as they were delivered; and it is claimed by appellants and not denied by appellee that if such defaults existed they excused appellants from further deliveries. But the jury were told that if "plaintiff was not in default in any respect relative to said contracts or either of them," they should award to plaintiff "the net profits that would have been made under any one or all of said contracts." Appellees may have been in default as to one contract and not as to the other. Yet under this instruction, the jury were permitted to assess damages as to both. The words "or either of them" should not have been inserted.

For the errors indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Upon petition for rehearing.

PER CURIAM: Our attention is now for the first time called to the fact that in appellant's brief the word "not" was omitted in the following sentence of the instruction quoted at length in the opinion herein, to-wit, "and if the jury further believe that the said goods could *not* have been obtained in the market by the plaintiff," and the instruction was therefore considered by us as if the word "not" were not in it. It follows that what was said in the opinion based upon the supposed absence of the word should be disregarded; but in all other respects the opinion is approved.

*Petition denied.*