Jordan, Marsh & Co. v. Patterson et al.

JORDAN, MARSH & CO. *vs.* JAMES T. PATTERSON ET AL.

Third Judicial District, New Haven, January Term, 1896. ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, JS.

In the absence of fraud the interpretation and legal effect of written instruments expressed in clear, unambiguous terms, is a question of law for the court, not one of fact for the jury.  Such interpretation is none the less a question of law because it may be aided by the use of intrinsic evidence showing the circumstances under which the instruments were written, and the practical construction placed thereon by the conduct and acts of the parties.

The plaintiffs, who had previously bought goods of the defendants, sent them fourteen separate orders for goods of their manufacture, each one specifying the quality and price of the garments ordered, the date on which they were to be delivered, and the time of payment.  The defendants replied acknowledging and describing the orders received, expressed their thanks therefor, and subsequently delivered a portion of the garments to the plaintiffs, but thereafter declined and refused to manufacture and deliver the balance ; and for this breach the plaintiffs sued them for damages.  Upon the trial the defendants claimed that their letter did not constitute an acceptance of the orders, or at all events was an acceptance of some one only of the fourteen; that each order constituted a separate contract, and that the plaintiffs could recover only on one of the fourteen orders.  *Held* that the trial court erred in not instructing the jury, as matter of law, that the defendants' letter constituted an acceptance of all the orders named in it.

For a breach of the vendor's agreement to deliver goods, the general rule is that the vendee is entitled to recover as damages the difference, at the time and place of delivery, between the contract price and the market price, if the latter exceeds the former.  If there is no market where the vendee could have supplied himself with like goods, he is entitled to recover the actual damages which he has suffered.

If, by reason of special circumstances alleged in the complaint, larger dam-

Jordan, Marsh & Co. *v*. Patterson et al.

ages are claimed by the vendee, either for profits prevented or losses sustained, they must ordinarily be confined to such as result from circumstances which may reasonably be supposed to have been in the contemplation of the parties when they made the contract. If at that time the vendor knew that the vendee had already contracted to sell a portion of the goods to others at a profit, the damages recoverable may fairly include such profits. If he knew that the vendee had ordered the goods to sell them thereafter at a profit, he is chargeable with knowledge of such profits as the market price, at the time of delivery, would have brought the vendee ; and evidence of sales made by the vendee is admissible as tending to prove such market price. Under such circumstances the vendor is also liable for such damages as the vendee may have sustained by reason of the latter's inability to deliver the goods pursuant to his contracts of sub-sales ; and the vendee in entitled to prove such damages.

Whether the circumstance from which the loss results or the gain is prevented, is or is not one which may be reasonably considered to have been in the contemplation of the parties at the time they made the contract, is, from the necessities of the case, a preliminary question for the decision of the trial judge, before evidence of losses suffered or gains prevented can be laid before the jury. If, however, the evidence is admitted, the jury should be instructed to disregard it if they reach a different conclusion upon the preliminary question.

One of the plaintiffs' traveling salesmen, sent out to sell by sample some of the goods which the defendants had contracted to make, was called to prove the sub-sales, and, among other questions, was asked if he knew by whom the goods were to be manufactured, and replied that he did through the plaintiffs' buyer. On objection this question and answer were excluded. *Held* that as the purpose of the inquiry was to show what the witness was to represent to the plaintiffs' customers as to the manufacture of the goods, the question and answer should have been admitted.

The plaintiffs' buyer was asked, respecting certain of the goods ordered of the defendants, at what price they would have been sold at retail. On objection the court excluded the question. *Held* that assuming the witness had knowledge of the market price at which such goods would have been sold, the question was proper and his answer would have been relevant.

[Argued January 21st—decided April 15th, 1896.]

ACTION to recover damages for the breach of a contract to manufacture and deliver goods, brought to the Superior Court in Fairfield County and tried to the jury before *Robinson, J.*; verdict and judgment for the plaintiffs, for $106.15 only, and appeal by them for alleged errors in the rulings and charge of the court. *Error, new trial granted.*

The case is sufficiently stated in the opinion.

*John H. Perry.* and *George E. Hill*, for the appellants (plaintiffs).

The rulings and charge of the court upon the question of damages were erroneous and prejudicial to the plaintiffs. *Griffin* v. *Colver*, 16 N. Y., 489; *Devlin* v. *Mayor*, 63 id., 8; *Cohn* v. *Norton*, 57 Conn., 493; 1 Suth. on Damages, 134; *Elbinger* v. *Armstrong* L. R., 9 Q. B. Cases, 473; *Baxendale* v. *Railway Co.*, L. R. 10 Ex., 35; *Reggio* v. *Braggiotti*, 7 Cush., 166; *Randall* v. *Raper*, 96 E. C. L., 82; *Hubbard* v. *Rowell*, 51 Conn., 423; *Simpson* v. *L. & N. W. Ry. Co.*, L. R. 1 Q. B. Div., 274; *Cory* v. *Iron, W'k Co.*, L. R. 3 Q. B. Cas., 181; *Trigg* v. *Clay*, 88 Va., 330; *Loescher* v. *Deisterberg*, 26 Ill. App., 520; *McHose* v. *Flumer*, 73 Pa. St., 365; *Lewis* v. *Roundtree*, 79 N. C., 122; *Howard* v. *Stillwell Mfg. Co.*, 139 U. S., 206; *Wakeman* v. *Wheeler*, 101 N. Y., 205; *Richardson* v. *Chynowath*, 26 Wis., 659; *Bank Note Co.* v. *Commissioners*, 79 Va., 573; *Crawford* v. *Parsons*, 63 N. H., 438; *Dunlop* v. *Higgins*, 1 H. of L. Cas., 381; *Hassard–Short* v. *Hardison*, 114 N. C., 482; *Frazer* v. *Smith*, 60 Ill., 146; *Railway* v. *Hill*, 70 Texas, 51; *Harrow Spring Co.*, v. *Harrow Co.*, 90 Mich., 147; *Taylor Mfg. Co.* v. *Hatcher Mfg. Co.*, 39 Fed. Rep., 440. The court also erred in allowing the jury to say what the legal effect was of the plaintiffs' order and its acceptance by the defendants. This was a question for the court, not the jury. *Hotchkiss* v. *Higgins*, 52 Conn., 213; *Bailey* v. *R. R. Co.*, 17 Wall., 105.

*Morris W. Seymour* and *John C. Chamberlain*, with whom was *Howard H. Knapp*, for the appellees (defendants).

The charge of the court relative to a recovery of profits on the plaintiffs' sub-sales was correct. *Hadley* v. *Baxendale*, 9 Ex., 341; *Messmore* v. *Shot Co.*, 40 N. Y., 422; Wood's Mayne on Damages, § 41; Sedgwick on Damages (6th ed.), 313, and particularly note citing *Williams* v. *Reynolds*, 34 L. J. (N. S.) 2 Q. B. 221; *Booth* v. *Spuyten Duyvil R. R. Co.*, 60 N. Y., 488; *Wetmore* v. *Patterson*, 45

Mich., 439; *Coxburn* v. *Ashland,* 45 Wis., 619; *Peace River Phos. Co.* v. *Graffling,* 58 Fed. Rep., 550; *Howard* v. *Mfg. Co.,* 139 U. S., 199; *Pennypacker* v. *Jones,* 106 Pa. St., 237; *Howe Machine Co.* v. *Bryon,* 44 Iowa, 159; *Butler* v. *Moore,* 69 Ga., 780; *Union Refining Co.* v. *Barton,* 77 Ala., 148; *Sledge* v. *Reid,* 73 N. C., 440; *Thol* v. *Henderson,* 8 Q. B. D., 457; *Hamilton* v. *McGill,* 12 L. R. I., 186; *Young* v. *Curton,* 6 Southern Rep. (Ala.), 352; *Koch* v. *Godshow,* 12 Bushnell (Ky.), 318; *Denver R. R. Co.* v. *Hutchinson,* 31 Neb., 572; *Berry* v. *Dwinel,* 44 Me., 255; *Wetmore* v. *Patterson,* 45 Mich., 439; *McKinney* v. *McEwen,* 48 id., 106; *Citon* v. *McEonald,* 60 Am. Rep., 488; *Schooner Lively,* 1 Gal., 314–325; *Bush* v. *Canfield,* 2 Conn., 485; *Wells* v. *Abernethy,* 5 id., 222; *McAlpin* v. *Lee,* 12 id., 129; *West* v. *Pritchard,* 19 id., 212; *Hubbard* v. *Rowell,* 51 id., 423; *Simpson* v. *Waterproof Mfg. Co.,* 37 id., 520. But assuming that under certain circumstances loss of profits can be recovered, when the seller knew, or ought to have known, that the goods were purchased for the purpose of selling the same again, and that too for profits on sales made both before and after the date of the contract, this is true *only when similar goods cannot be purchased in the market. Culen* v. *Woodbury Glass Works,* 108 Pa. St., 220.

ANDREWS, C. J. This action was brought to recover damages for the non-performance of a contract. The plaintiffs are large dealers in dry goods at wholesale and by retail. The defendants are manufacturers of knit underwear. The complaint alleged, generally, that on the 16th day of March, 1892, the defendants agreed to manufacture for the plaintiffs a large number of knit undergarments of various styles and at agreed prices, amounting in the whole to nearly twelve thousand dozen, and to deliver the same at various times but all before the 1st day of December, 1892, for which the plaintiffs were to pay; that the plaintiffs contracted for these goods with the intent, as the defendants knew, to resell the same to other parties; that at the date of said contract they had bargained to sell a part of said garments to other persons

at a profit; that afterwards, and before the time when said goods were to be delivered, they bargained to sell the balance of the same to certain other persons at a profit; that the defendants delivered to the plaintiffs in pursuance of the said agreement, one hundred and sixty dozen of the said goods, but neglected and refused to deliver the remaining part; and claimed damages to the amount of $10,000.

The defendants' answer denied the making of the said contract alleged by the plaintiffs, and set up a different one —a conditional one—and they said that in performance of the contract so alleged by them they furnished the said one hundred and sixty dozen of said garments, but that the plaintiffs neglected to perform the conditions of said last mentioned contract on their part to be performed, and therefore they, the defendants, did not furnish any more of said goods. The answer also demanded pay for the goods the defendants had so furnished, and damages for the non-performance by the plaintiffs.

The finding of the court shows that there was evidence that the parties had had dealings with each other prior to the 10th day of February, 1892; that the plaintiffs had purchased of the defendants garments of their manufacture, some of which were then manufactured and some of which were to be thereafter manufactured and delivered, and which were in fact so manufactured and delivered, but that on said day there was no contract subsisting between them; that between the said 10th day of February, 1892, and the 16th day of March following, the plaintiffs sent to the defendants fourteen separate orders for goods of their manufacture, each one duly numbered and signed, specifying the number, quality, style and price of the goods ordered, and the date when they were to be delivered, as well as the date of payment; that on said 16th day of March, 1892, the defendants sent a letter to the plaintiffs as follows :—" Office of The Patterson Brothers Knitting Co. Ladies', Gents' and Children's Fine Knit Underwear. Bridgeport, Conn., March 16, 1892. Messrs. Jordan, Marsh & Co., Boston, Mass. Gentlemen. We are in receipt of the following contracts for which we thank you.

(Then followed a description of the fourteen orders above referred to by their numbers and amounts.)   Yours Truly (Signed)  H. B. Odell, Manager."

It is also found that the defendants delivered to the plaintiffs one hundred and sixty dozen of the goods mentioned in said orders.   There was no claim made that Odell was not the duly authorized agent of the defendants ; or at any rate, no claim that the question of his agency was not submitted to the jury with proper instructions.   The case was tried on an issue closed to the jury and the plaintiffs had a verdict for an amount in damages which, they assert, is very much less than they are entitled to have, and they have appealed to this court alleging various errors in the trial court.

The plaintiffs claimed that the said orders and the letter of March 16th, 1892, constituted one contract as to all the goods named in all the orders ; and that it was the contract on which this action was brought ; that the letter was afterwards ratified and confirmed by the defendants themselves as an acceptance of all the orders and was so treated by them, because they delivered a portion of the goods under the orders generally.

The defendants, on their part, claimed that the letter of March 16th, 1892, was not an acceptance ; that if an acceptance at all, it was an acceptance of only some one of the orders ; that each of the orders stated a separate contract, and must be separately declared on ; and as the complaint declared on one contract only, in no event could there be a recovery in this case on more than one of such orders.

Upon this part of the case the judge instructed the jury as follows : "It is for you to say what language the paper (i. e. the letter of March 16th, 1892) speaks, and what the intention was in the use of the language it contains ; it is for you to say whether a person who sends such a paper as this to another under the circumstances here claimed, and then goes forward and begins to fill and does fill some of these very orders named in the paper so sent (if such be the facts), could fairly be said to have had no intention to speak the language of acceptance and promise in that paper ; or had

no intention, by the language used, to accept and promise to fill the orders he named. These are matters for you to determine after a careful and serious examination of the evidence and claims on both sides."

The substance of this instruction was repeated by the judge twice or three times in the course of his charge, and at one time with language which apparently implied that the jury might select one of the separate orders, and if that was broken, render a verdict for damages only as to such particular contract. This was error.

There was no ambiguity or doubt as to the terms of the orders, or of the letter of March 16th, and there was no suggestion of any fraud. Under such circumstances it was for the judge and not for the jury to say what these writings meant. It was a question of law and not of fact. *Gibbs* v. *Gilead Eccl. Society*, 38 Conn., 153, 167; *Hotchkiss* v. *Higgins*, 52 Conn., 205, 213; 1 Starkie on Evidence, 429; 1 Greenleaf on Evidence, § 277. The orders and the letter were offered as proof of a contract between the parties. If a contract at all, it was a contract in writing. As such its interpretation—its legal effect—was a question of law for the judge. Nor was such interpretation the less a question of law, because the construction might have been aided by the use of extrinsic evidence, such as the business of the parties, their knowledge each of the business of the other, and their previous dealings, including as well what may be called the practical construction put upon the contract by the conduct and acts of the parties. The judge by the aid of all the undisputed facts in the case could put himself into the situation of the parties and look at the contract from their standpoint. But from whatever source light was thrown upon the contract, what its meaning was, what promises it made, what duties or obligations it imposed, was a question of law for the judge. It was, after all, the legal reading and interpretation of what was written. See *Smith* v. *Faulkner*, 12 Gray, 251, 254; *Brady* v. *Cassidy*, 104 N. Y., 147, 155; *Neilson* v. *Harford*, 8 M. & W., 805, 823.

In the light of the undisputed fact in this case, the trial

judge should have instructed the jury that the letter of March 16th, 1892, was an acceptance of all the orders named in it. And as there was but one contract claimed to exist between these parties, such instruction would, in effect, have directed them to exclude from their consideration the conditional contract claimed by the defendants.

The general intention of the law giving damages in an action for the breach of a contract like the one here in question, is to put the injured party, so far as it can be done by money, in the same position that he would have been in if the contract had been performed. In carrying out this general intention in any given case, it must be remembered that the altered position to be redressed must be one directly resulting from the breach. Any act or omission of the complaining party subsequent to the breach of the contract and not directly attributable to it, although it is an act or an omission which, except for the breach would not have taken place, is not a ground for damages. In an action like the present one, to recover damages against the vendor of goods for their non-delivery to the vendee, the general rule is that the plaintiff is entitled to recover in damages the difference at the time and place of delivery, between the price he had agreed to pay and the market price, if greater than the agreed price. Such difference is the normal damage which a vendee suffers in such a case. And if there are no special circumstances in the case, a plaintiff would, by the recovery of such difference, be put in the same position that he would have been in if the contract had been performed. This, of course, implies that there is a market for such goods where the plaintiff could have supplied himself. If there is no such market, then the plaintiff should recover the actual damages which he has suffered.

There may be, and often there are, special circumstances other than the want of a market, surrounding a contract for the sale and purchase of goods, by reason of which, in case of a breach, the loss to a vendee for their non-delivery, is increased. In such a case the damages to the vendee which he may recover must, speaking generally, be confined to such

as result from those circumstances which may reasonably be supposed to have been in the contemplation of the parties at the time they made the contract. It must be remembered also, in attempting to carry out this general intention of the law in any given case, that any damages which the plaintiff by reasonable diligence on his part might have avoided, are not to be regarded as the proximate result of the defendant's acts.

In the present case the plaintiffs claimed that at the time of delivery there was no market in which they could procure such goods as the defendants were to deliver to them. This was a fact which might be proved by the testimony of any person who had knowledge on the subject. And if it was true, the plaintiffs could not, by any diligence on their part, have relieved themselves by such purchase from any portion of the damages which they suffered.

There were various special circumstances by reason of which the plaintiffs claimed to recover damages: One was that they contracted for the said goods for the purpose of reselling them. It is averred in the complaint—and there appears to have been evidence on the trial tending to prove such averments—that at the time the goods were contracted for the plaintiffs had bargained to sell a portion of the said garments to other parties at a profit; and that the defendants had knowledge of the sub-contracts. As to the profits on these sub-sales, the judge charged the jury that the plaintiffs were entitled to recover these as a part of their damages; because, as the judge correctly said, the existence of these sub-sales was known to the defendants at the time they contracted to furnish the goods, and the profits that were to be made must be considered as having been contemplated by them at that time.

It is also averred in the complaint that soon after the time the contract was made, the plaintiffs, relying on the same, began to sell the balance of said garments to other parties at a profit, of which sub-contracts they gave notice to the defendants a reasonable time before the date at which the goods were to be delivered. The judge charged the jury that these

profits should not be allowed; because, as he said, these sales cannot be considered to have been in the contemplation of the parties at the time they made their contract. As the judge stated it, this ruling was correct. Notice to the defendants after their contract was entered into, would not increase their liability. If these sub-sales could not reasonably be considered to have been in the contemplation of the parties *at the time they made* the contract, then the defendants could not be made liable for the special profits to be derived therefrom.

But there is an aspect of the question of the profits on these latter sub-sales—which seems not to have been very clearly presented—upon which the evidence of their terms might have been admissible. The defendants had knowledge that the plaintiffs contracted for these garments in order to resell them to others. They were chargeable with knowledge that the plaintiffs would make such profits as the market price of such goods would give them. If proof of the terms of these last mentioned sub-sales was offered for the purpose of showing what the market price of such goods was at the time they were to be delivered, then the evidence should have been received. The market value of any goods may be shown by actual sales in the way of ordinary business.

It was alleged in the complaint that by reason of the default of the defendants the plaintiffs had been obliged to pay large damages to their vendees for their failure to deliver to them the goods so bargained to them, and they offered evidence to prove such a payment to one of their vendees, which evidence was, on objection by the defendants, excluded. In respect to this item of damage the rule above stated furnished the proper test. In restoring an injured party to the same position he would have been in if the contract had not been broken, it is necessary to take into the account losses suffered, as much as profits prevented. And whenever the loss suffered, or the gain prevented, results directly from a circumstance which may reasonably be considered to have been in the contemplation of the parties when entering into the contract, the plaintiff should be allowed to prove such loss.

Whether the circumstance from which the loss results, or the gain is prevented, is or is not one which may be reasonably considered to have been in the contemplation of the parties, is, from the necessities of the case, an introductory one upon which the judge must in the first instance decide, before evidence either of losses suffered, or gains prevented, can be shown to the jury. When the admissibility of evidence depends upon a collateral fact, the judge must pass upon that fact in the first place, and then if he admits the evidence, instruct the jury to lay it out of their consideration if they should be of a different opinion as to the preliminary matter. The particular evidence excluded in this case was that of Edward J. Mitton, one of the plaintiffs, to the effect that the plaintiffs had paid to William Taylor & Sons, one of their vendees, the sum of $641 as damages. Both the objection to this evidence and the ruling upon it, seem to admit that this sub-contract was one of which the defendants had notice. The objection to it was that it was not admissible under any allegation in the complaint. But precisely this sort of loss was alleged in the complaint and denied in the answer, and unless other reasons existed for the exclusion of this testimony than the one claimed, it should have been received. If the sale to Taylor & Sons was one of those sales of which the defendants had notice at the time they made their contract with the plaintiffs, then the evidence was clearly admissible for the reason given by the trial judge when instructing the jury that the profits from these sales should be allowed.

For the purpose of proving the sub-sales, the plaintiffs offered the deposition of F. R. Chase, one of their traveling salesmen. In the early part of 1892 he was sent out by the plaintiffs to make sales by sample of some of the goods which the defendants were to manufacture. He was asked if he knew by whom these goods were to be manufactured. He said he did through Mr. Campbell, the plaintiffs' buyer. This question and answer were objected to by the defendants and ruled out. This objection seems to have been made on a total misapprehension of the object of the evidence.

The witness was stating what he was to represent to his customers as to the manufacture of the goods he was trying to sell them. Both question and answer should have been admitted. Whether or not the goods when they should be delivered corresponded with the sample and with this state-ment, would have been quite another question.

One Deland, a buyer for the plaintiffs, testified. He was asked respecting certain of the goods which the defendants had contracted to deliver to the plaintiffs: "At what price would these have been retailed?" On objection he was not permitted to answer. Assuming that Deland had knowledge of the market price at which such goods would have been sold, it is very obvious that his answer would have been relevant and should have been received.

The other questions made in the case, so far as they are material, would not be likely to arise on another trial.

There is error and a new trial is granted.

In this opinion the other judges concurred.