### CHEROKEE MILLS v. GATE CITY COTTON MILLS.

1. The contract for a breach of which the plaintiff sought damages was one which was enforceable as a valid executory contract of sale, notwithstanding the statute of frauds, being evidenced by a definite written proposal made by the defendant which was unconditionally accepted in writing by the plaintiff.

2. When a plaintiff corporation alleges dealings between its officers and the officers of the defendant corporation, but fails to give the names of the officers referred to, it is the right of the defendant, by appropriate special demurrer to call on the plaintiff to do so.

Argued January 31, — Decided March 4, 1905.

Action for breach of contract. Before Judge Lumpkin. Fulton superior court. January 22, 1904.

*Sanders & Davis* and *J. F. Golightly*, for plaintiff, cited Civil Code, § 3646; *Ga. R.* 86/558; 91/404; 111/146; 115/408; 118/424; 112/199.

*Payne & Tye* and *Winfield Jones*, for defendant, cited, on statute of frauds: Civil Code, § 2694; *Ga. R.* 66/338–42; 73/400–405; 100/645–50 (2); 112/359–61; 118/541; Clark, Con. 119; 1 Beach, Con. § 569; 8 A. & E. Enc. L. (1st ed.) 729, 746. Attempt to sell non-existing thing, nugatory: *Ga. R.* 55/586; 61/270; 65/644–6; 112/199; 48 Conn. 250; 143 U. S. 346; 11 Pet. 72; 24 A. & E. Enc. L. 1042–6. Attempt to confirm such a transaction, nugatory: 127 Mass. 547. Offer not accepted: *Ga R.* 81/704; 88/743–8; 95/518; 97/465; 114/209, 222; 117/86–94, 23 N. J. Eq. 512; 26 Am. St. R. 676; 1 Beach,

Con. 67, §§ 51–4; 24 A. & E. Enc. L. 1032. Acceptance after lapse, futile: 116 *Ga.* 108–13; Clark, Con. 53; 1 Beach, **Con.** § 54; 119 U. S. 149.

EVANS, J. A suit for damages for the alleged breach of a contract was brought by the Cherokee Mills against the Gate City Cotton Mills. As evidencing the contract, the plaintiff relied upon two letters, one of which, dated September 23, 1902, signed by the defendant and addressed to the manager of the plaintiff, contained the following: " We beg to confirm our sale of (25,-000) Twenty-five Thousand pounds of Silver Gray Yarns to you last evening over Phone, basis of 7s or 8s, at 16 cts. per pound, Delivered, less 2% for commissions and 2% cash discount, terms 10th Prox. The conditions of delivery to be made upon the completion of our Dye plant, which we hope and expect to have completed, and machinery installed, by Nov. next; your order shall have prompt attention so soon as our Dye plant is in working order. If you could use any Nos. above 12s, we could duplicate your order for ' Mock Egyptian ' on basis of 14 1/2 cts. for No. 10s, White Yarn at 2 cts. for dying, and 1/4 ct. rise for each No. above 10s. Command us when we can serve you." The other letter was one written on September 26, 1902, signed by the plaintiff and addressed to the defendant, replying as follows: " We beg to acknowledge rect. of your favor of the 23d inst., confirming and setting forth conditions of our purchase of 25,000 lbs. of Silver Gray Yarn from you, which is satisfactory to us. As to delivery, we hope you will be able to make delivery commencing in Nov., and complete the order by the 1st. of Jan. Just at present we could not use any Nos. above 10s." The plaintiff's petition discloses that in the negotiations had by telephone (referred to in the first letter) the defendant did not mention its inability to fill the order until the completion of its dye plant, but merely quoted prices, and that the plaintiff accepted its offer and asked that it put the same in writing. The petition also set forth the following allegations of fact: On and after November 1st, 1902, the plaintiff had communication with the defendant, by wire and by letter, regarding the time the latter would be able to fill the order for yarn, and the defendant recognized its obligations under the contract, but stated that on account of some delay in getting certain machinery it had been unable to start its

dye works.    Later the defendant excused its non-performance on the ground of sickness among its employees, and for other causes ; and on May 1st, 1903, the price of cotton and cotton yarns having in the meantime advanced, refused to carry out its contract, claiming that " said contract was conditional, and it was not under obligation to ship said yarns."    Defendant " knew on the 1st of Jan., 1903, that it was not going to ship said yarns," but instead of so notifying the plaintiff, continued its various excuses up to May 1st, on which date the price of the yarns ordered had advanced from 16 to 20 cents per pound, and this advance in price was the true reason for declining to fill the order.    The defendant could have completed its dye works and shipped the yarns by that date, having had ample time in which to do so, but, in bad faith and on account of the advance in cotton, " refused to complete said dye works in order to evade the shipping of said 25,000 lbs. of yarn."    The defendant wilfully misled plaintiff as to its intention of complying with its contract, so that plaintiff could not get yarns from other sources before the price went up to 20 cents per pound ; on May 1st repudiated the contract, flatly refused to make any settlement with plaintiff for the damages suffered, and in bad faith forced the plaintiff into litigation in order to assert its rights.    In consequence the plaintiff was entitled to recover the sum of $200 expended for attorney's fees, in addition to $1,000 damages, representing the difference in the market price of the yarn on May 1st, when the breach of contract was committed, and that at which the yarn had been sold.

To this petition the defendant demurred both generally and specially.    The court sustained the general demurrer and also two of the special grounds of demurrer, with leave to the plaintiff to amend its petition within ten days, in order to meet, if possible, the objections urged against it.    " The plaintiff failed and refused to make any amendment," and brought the case to this court for review.

1.    Such an executory contract of sale as that declared on in the present case is enforceable, if properly evidenced in writing, so as to take it out of the statute of frauds.    *Forsyth Mfg. Co.* v. *Castlen,* 112 *Ga.* 199.    But on the argument here, counsel for the defendant in error insisted that the two letters relied on by

the plaintiff as setting forth the contract did not constitute a sufficient memorandum of the parol agreement entered into by the parties over the telephone, in that the letter of confirmation written by the Gate City Cotton Mills added a condition as to delivery not theretofore agreed on, and there was not, in the letter in reply, written by the Cherokee Mills, an unqualified acceptance of the offer as thus conditioned. To constitute a meeting of the minds of two contracting parties, there must, of course, be an unconditional acceptance of an unconditional offer. *Decker* v. *Gwinn,* 95 *Ga.* 518. There was, however, such a meeting of minds alleged in the present petition. While the Gate City Cotton Mills, in its letter of September 23, for the first time stipulated that delivery was not to take place till the completion of its dye plant, yet the Cherokee Mills made no point on this change in their previous parol understanding, but wrote in reply that the conditions named in the letter confirming the sale were satisfactory. This change was not overlooked; for, referring to the time of the proposed delivery, the writer expressed the hope that the Gate City Cotton Mills would " be able to make delivery commencing in Nov., and complete the order by the 1st of Jan." No specific time for delivery was mentioned during the course of the negotiations conducted over the telephone. The defendant was invited to reduce its offer to writing; it did so, stating the condition on which delivery could be made; the terms were satisfactory to the plaintiff, and it so explicitly stated in its reply to the defendant's proposal. The letter of acceptance was unqualified and unconditional. The hope expressed by the writer as to delivery being made between November and January evidently was inspired by and was in courteous acknowledgment of the expressed hope and expectation on the part of the Gate City Cotton Mills that its dye plant would be completed and its machinery installed therein by November, and its assurance that the order should have prompt attention so soon as its dye works were in working order. The concluding sentence of the letter of acceptance was in direct reply to an offer to duplicate the order of 25,000 pounds in yarns of a different kind, which offer was for the time being declined. No further negotiations were necessary or were contemplated by either party; the trade was closed, and each of the parties became bound by its terms. Accordingly

we hold that the breach of contract committed by the defendant gave to the plaintiff a cause of action, and that the court erred in sustaining the general demurrer to the plaintiff's petition.

2. In the third paragraph of the petition, wherein the tentative negotiations had by telephone were stated, the plaintiff alleged that the same were conducted "through its proper officers;" and in the eighth paragraph of the petition, in which the plaintiff set forth its contention that the defendant had acted in bad faith and was therefore liable for attorney's fees, the plaintiff averred that it had "approached said company, through its proper officers, to make good said contract," but that they flatly refused to pay the plaintiff any damages.  Each of these paragraphs was specially demurred to on the ground that the names of the officers referred to were not given.  The court, in passing upon the defendant's special demurrers, held that it was entitled to the information thus called for, but in the order sustaining the demurrers gave the plaintiff ten days in which to make an appropriate amendment to meet the objection therein urged.  The plaintiff did not avail itself of this privilege, the court having by the same order sustained the general demurrer to the petition, so that the amendment suggested would not have saved the case from a dismissal.  We think the ruling on the special demurrers was right.  To call on the plaintiff to give the names of its own officers who undertook to contract in its behalf was certainly not unreasonable, nor was it any hardship on the plaintiff to require it to name the persons with whom it had dealt, as officers of the defendant corporation, in its effort to adjust its claim for damages.  These persons were, as officers of the defendant, charged with having acted in bad faith; and the defendant, being a corporation, had a right to be put on notice as to their names, in order that it might defend by showing (if such were the fact) that the persons named were either not officers representing it, or were not acting within the real or apparent scope of their authority.  The demand for additional information on the subject was not idle, was properly made by demurrer, and no reason appears why the plaintiff could not have furnished the information.  As the case was improperly dismissed on general demurrer, we have given direction that the plaintiff be afforded an opportunity to meet the objection raised by the special demurrers, by offering an appropriate amendment.

*Judgment reversed, with direction.  All the Justices concur.*