## Haskell & Barker Car Company *v.* Allegheny Forging Company.

[No. 6,818. Filed May 24, 1910. Rehearing denied December 26, 1910. Transfer denied April 5, 1911.]

1. CONTRACTS.—*Proposals.*—*Acceptance.*—*Letters.*—Where defendant wrote to the plaintiff to "enter" its order for certain material, at certain prices, plaintiff answering that it had "entered" the order for its "best attention," that it expected "to make shipment" by the time specified, that such order completed "the lot" on which plaintiff had "quoted" prices, and that it "expected to ship" the materials, an enforceable contract is executed, especially where it is shown that the plaintiff partially complied with the order. pp. 393, 395.

2. CONTRACTS.—*What are.*—A contract is an agreement between two or more persons in which each party binds himself to do or to forbear to do some act, and each acquires a right to what the other promises. p. 394.

From Porter Superior Court; *Harry B. Tuthill,* Judge.

Action by the Allegheny Forging Company against the Haskell and Barker Car Company. From a judgment for plaintiff, defendant appeals. *Reversed.*

*James F. Gallaher,* for appellant.

*William J. Whinery,* for appellee.

WATSON, J.—This is an action brought by appellee to recover a balance of $332.90 alleged to be due from appellant for goods sold and delivered by appellee to appellant. The complaint alleges the amount due, having attached a bill of particulars setting out the dates and amounts. To this complaint an answer of general denial was filed, also an amended

counterclaim, to which a demurrer was filed and sustained, and exceptions taken by appellant. The cause was tried by a jury, which returned a verdict in favor of appellee in the sum of $371.20, together with answers to certain interrogatories. Judgment was rendered on the verdict.

Five errors are assigned, but the two relied upon for reversal are that "the court erred in sustaining the demurrer to the amended second paragraph of answer, termed 1. 'counterclaim,' and in overruling appellant's motion for a new trial."

The counterclaim is based upon the following correspondence between appellant and appellee:

"Order No. 6,504.    Haskell & Barker Car Company. Duplicate.   Michigan City, Indiana, January 24, 1905. Allegheny Forging Company, Pittsburg, Pennsylvania.

Gentlemen: Please enter our order for the following material for shipment as specified below:

36 winding chains, $\frac{1}{2}$ inch short straight link plain chain, with $\frac{1}{2}$ inch long link at one end. Length over all 48$\frac{3}{4}$ inches.

Delivery:  $\frac{1}{2}$ by February 15, 1905.
               $\frac{1}{2}$ by March 1, 1905.

Price:  $2.95 per 100 lbs. f. o. b. Michigan City, Indiana.

Terms:  30 days or 1 per cent off for cash in 10 days.
Yours very truly,
John H. Barker, President."

"Allegheny Forging Company.
Pittsburg, Pennsylvania, January 28, 1905.
Order—Chain.

Haskell & Barker Car Company, Michigan City, Indiana.

Gentlemen: We have your esteemed favor of the 24th inst., with order No. 6,504 for $\frac{1}{2}$ inch chain, which we have entered for our best attention, and expect to make shipment by the time you specified.

This we understand completes the lot of chain on which we quoted December 12.
Very truly yours,
Allegheny Forging Company,
O'Refior."

"Pittsburg, Pennsylvania, January 30, 1905.

Your order No. 6,504 of the 24th inst. for chains has been entered as our No. 4,372. We expect to ship same within ... days.

Thanking you, we are,

Yours truly,
Allegheny Forging Company,
W. Taylor."

The counterclaim avers the acceptance of the order by appellee; that a portion of the chains were forwarded to appellant, in compliance with the contract, but that all were not delivered, although request was made for them; that, by reason of the failure of appellee to comply with its part of the contract, appellant was compelled to go into the open market and purchase that portion of the chains which appellee had failed to deliver in accordance with the contract, and to pay therefor the sum of $84 in excess of the amount for which appellee had agreed to furnish said chains to appellant; that appellant was engaged in the manufacture of freight-cars in Michigan City, Indiana; that the chains mentioned were purchased for use in a certain order of cars, and were required for such purpose at a fixed time, which facts were well known to appellee at the time said contract was made; that by reason of the failure of appellee to supply appellant with such chains, in accordance with its contract, the manufacturing business of appellant was delayed and disarranged, to its damage in the sum of $100. There is also a claim of damages for expense of telegram and telephone messages.

If this correspondence amounts to a contract complete, then the demurrer to the counterclaim should not have been overruled. Blackstone defines a contract to be "an agreement upon sufficient consideration, to do or not to do a particular thing." 2 Blackstone's Comm. 442. It is defined in 2 Words and Phrases 1514, as "a mutual assent of two or more persons competent to contract, founded on a sufficient and legal motive, inducement, or

consideration, to perform some legal act, or to omit to do anything, the performance of which is not enjoined by law." A contract is an agreement or covenant between two or more persons in which each party binds himself to do or forbear some act, and each acquires a right to what the other promises. A mutual promise upon lawful consideration or cause, which binds the party to a performance. It is said in 1 Beach, Contracts §65: "The proposal and acceptance, as discovered from the acts or correspondence of the parties, may show a complete contract or consensus, such as a court of equity would specifically enforce, although the contract might be imperfect and incomplete as regards form."

An offer or proposal made by one person, and the acceptance thereof by the other, constitutes a contract; in other words, a contract is thereby concluded so that it may

2. be enforced. *Cochrane* v. *Justice Mining Co.* (1891), 16 Colo. 415, 26 Pac. 780.

In the case of *Bauman* v. *McManus* (1907), 75 Kan. 106, 89 Pac. 15, 10 L. R. A. (N. S.) 1138, there was involved a correspondence after an order had been given the

1. traveling salesman, in which, two days afterwards in acknowledgment thereof, it was said: "Your kind order through Mr. Schutz is duly at hand, and will receive our prompt and careful attention." The court said: "The promise that the order shall receive prompt and careful attention seems to imply something more than that the manufacturers will quickly and cautiously investigate the advisability of accepting it. * * * The expression of thanks for the favor has some tendency in the same direction. We incline strongly to the opinion that the letter, standing by itself, was as effectual to close a contract as though in set phrase it had said that the goods would be shipped; that to permit any other construction to be placed upon it would be to countenance the studied use of equivocal expressions, with a set purpose, if an advantage may thereby be derived, to

keep the word of promise to the ear and break it to the hope.''

So in the case at bar, when appellant received the answer of appellee as to order No. 6,504, dated January 24, 1905, which said: ''We have your esteemed favor of the 24th inst., with order No. 6504,'' etc., it seems to us that appellant knew the order had been accepted, and so understood and treated it.

Giving these letters their ordinary meaning, as understood in the commercial world, we are unable to see why the minds of the parties did not meet, and make a complete and enforceable contract between them. *Jordan, Marsh & Co. v. Patterson* (1895), 67 Conn. 473, 35 Atl. 521; *Bauman v. McManus, supra;* 1 Beach, Contracts §65.

Moreover, it is averred that a part of the chains had been shipped in compliance with the order. This shows that appellee treated the order as accepted, and, therefore, for this additional reason, the contract was completed and binding. *Cherokee Mills v. Gate City Cotton Mills* (1905), 122 Ga. 268, 50 S. E. 82; *Star Union Line v. Boston Medical Institute* (1906), 126 Ill. App. 106; *Jordan, Marsh & Co. v. Patterson, supra.*

The court erred in sustaining the demurrer to the counterclaim, for which this cause must be reversed.

We do not pass on the other error assigned, for the reason that at the retrial of this cause this question may not arise.

Judgment reversed, with leave to both parties to amend the pleadings if they so desire.