HARLAN P. HUBBARD vs. GEORGE P. ROWELL AND OTHERS.

The defendants, who were advertising agents, sold the plaintiff certain space for advertisements in a large number of newspapers, for fifteen months. They knew that he purchased it to sell again at an advance, and he did in fact so sell it. Held, in a suit for a breach of the defendants' contract, that the plaintiff was entitled to recover for the profits

that he would have received from responsible parties to whom he had sold the space.

By the contract the advertisements furnished by the plaintiff were to follow advertisements of a certain class named. Held to mean that they were to follow next after.

[Argued December 6th, 1883—decided February 15th, 1884.]

ACTION for breach of contract; brought to the Superior Court. Facts found by a committee and case reserved for advice. The facts are sufficiently stated in the opinion.

*S. E. Baldwin* and *E. P. Arvine*, for the plaintiff.

*H. E. Pardee* and *J. W. Alling*, for the defendants.

PARDEE, J. This is a complaint for damages for breach of contract.

The defendants had control of space for advertisement in a large number of newspapers published in several states. The plaintiff purchased a portion of it, and signed the following contract:

"Oct. 1st, 1879.

"Messrs. Geo. P. Rowell & Co.:

"Gentlemen: You are hereby authorized to insert two inches (copy changed at pleasure), until January 1st, 1881, in the newspapers of the American Newspaper Union, as follows: New York Newspaper Union; Chicago Newspaper Union; Milwaukee Newspaper Union; St. Paul Newspaper Union; Cincinnati Newspaper Union; Southern Newspaper Union; for which service, including a position of first advertisement following markets, I agree to pay thirty-six hundred dollars, in equal monthly payments of three hundred dollars each, the first payment to be made to day, and the remaining payments to follow on the first of each succeeding month, until the entire sum has been paid. In default of payment Messrs. Rowell & Co. are authorized to stop the advertisement, and I agree to pay the regular short time price for the advertisement for the time published, less the agent's commission. H. P. HUBBARD."

The word "markets" refers to the publication of current prices for farm products and other merchandize. The defendants knew that he purchased the space with the intention of selling it to advertisers. He at once sold it at a profit to two parties, describing it as "immediately" following "markets," and their advertisements began to appear in the second week in October.

Paid matter is usually divided into classes—"reading notices," "special notices," and "ordinary advertisements;" the price being in that order. When the plaintiff signed the contract he supposed that all papers published "markets," and were made up in this manner, namely: 1st, reading matter; 2nd, reading notices; 3rd, special notices; 4th, markets; lastly, ordinary advertisements. He soon learned that some did not publish "markets;" moreover he was dissatisfied with the place given in certain instances to the advertisements of his customers, and so informed the defendants. The parties subsequently signed a contract as follows:

"October 29, 1879.

"It is agreed that on the contract made with Mr. H. P. Hubbard, dated October 1st, for advertisements in the American Newspaper Union list, the payments shall be made upon our monthly drafts at one day's sight, instead of at sight, and that they shall be drawn on the first of each month, commencing with November next. Commencing with December, the drafts shall be for $600, to cover amount due on both contract of October 1st, and of October 29th. On the contract of October 1st, it is also agreed that in papers where no markets appear, or where markets do appear and the position is unfavorable, the advertisements of Hop Bitters and Kidney Wort may be placed at the top of next column.     GEO. P. ROWELL,

H. P. HUBBARD."

The last sentence refers to the first contract. In the following month in some papers the defendants interposed "reading notices" between "markets" and the advertise-

ments of the plaintiff's customers. He then denied, while they insisted upon, their right to do this. During the time of publication they gave them the place next following markets in a portion of the papers only, and shortly ceased publication on or about July 6th, 1880, the plaintiff having returned their draft for the month unpaid.

The complaint is that the defendants failed to carry their first contract into effect in instances not provided for in the second; and asks for damages. The case is reserved for the advice of this court.

When a contract undertakes to declare the relation which one thing shall bear to another so far forth as place is concerned, and provides that one shall have a "position following the other," the interpretation is to be that it shall be next following; for if an indefinite number of other things about which the contract does not concern itself may be interposed, the specified two may be to such an extent separated as to destroy the force of it.

The defendants having failed to carry it into effect, the plaintiff is entitled to damages; and if persons of pecuniary ability had agreed to pay him a larger sum for the space than that for which he had purchased it, this advance properly constituted an item in the aggregate. This profit can be easily and certainly determined. The defendants knew that the plaintiffs bought to sell, and when they assumed the responsibility of interpreting their contract they knew that he had sold and to whom; they were bound to assume also that he had sold at an advance.

In *Messmore* v. *N. York Shot & Lead Co.*, 40 N. York, 422, the defendant agreed to deliver merchandise to the plaintiff with knowledge that the latter had agreed to deliver like merchandise to a purchaser, and failed to perform. *Held*, that the difference between the price the plaintiff was to give and that which he was to receive was properly recovered as damages. The court said: "The rule however is changed when the vendor knows that the purchaser has an existing contract for re-sale at an advanced price, and that the purchase is made to fulfil such contract, and

the vendor agrees to supply the article to enable him to fulfill the same; because those profits which would accrue to the purchaser upon fulfilling the contract of re-sale may justly be said to have entered into the contemplation of the parties in making the contract. * * This rule is based upon reason and good sense and is in strict accordance with the plainest principles of justice. It affirms nothing more than that where a party sustains a loss by reason of a breach of contract, he shall, so far as money can do it, be placed in the same situation with respect to damages as if the contract had been performed."

. In *Hadley* v. *Baxendale*, 9 Exch., 341, the court said: "We think the proper rule in such a case as the present is this: When two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be * * such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract as the probable result of the breach of it."

In *Fletcher* v. *Taylor*, 19 C. B., 21, the defendant had contracted to build a ship, which was to be delivered to the plaintiff on the 1st of August, 1854. It was not delivered till March, 1855. The vessel was intended by the plaintiffs, and from the nature of her fittings the defendants must have known the fact, for a passenger ship in the Australian trade. Evidence was given that freights to Australia were very high in July, August and September, but fell in October, and continued low till May, when the vessel sailed; and that had she been delivered on the day named, she could have earned £2,750 more than she did. On the other hand, it was shown that the plaintiffs would have extended the time for delivery till the first of October, if the defendants would have bound themselves to that day under a demurrage, (which however was refused,) and that they had stated as their reason for wishing to have the ship then, "that after that time the days would be shortening so fast that they would be seriously inconvenienced and prejudiced in fitting the vessel out." The judge charged in the words

of *Hadley* v. *Baxendale*, and the jury found a verdict of £2,750. An attempt was made to set aside the verdict for excess of damages, on the ground that if the plaintiffs' offer had been complied with the loss of freight would have been suffered, and that the damages should be measured rather by the species of loss which they had themselves pointed out, than by that which they afterwards set up. The rule was refused.

In *Waters* v. *Towers*, 8 Exch. R., 401, the marginal note is as follows: "In an action by the plaintiffs for the non-fulfillment of a contract by the defendants to furnish certain machinery within a reasonable time, it was averred as special damage that the plaintiffs had thereby been prevented from fulfilling a contract with third parties and lost the profits thereon. *Held*, that the jury, although not bound to assess the damages at the amount of such profits, yet might do so if satisfied by reasonable evidence that the plaintiffs would have obtained such profits but for the breach of contract by the defendants. *Held* also, that such damages were equally recoverable although the contract which would have produced the profits could not have been enforced at law, because not in compliance with the statute of frauds, and although it was made by the three plaintiffs with two of the plaintiffs carrying on a separate business."

And if the plaintiff has paid more than the value of the space delivered to him this excess would properly constitute another item. The defendants insist that the fact that the plaintiff made several monthly payments in advance, with knowledge as to the place given to the advertisements during previous months, estops him. But at the outset he made written protest against their manner of performance and never withdrew it. With this warning they assumed all risk attendant upon their action. He could make payment and rely upon his right to recover it in damages.

The Superior Court is advised to render judgment for the plaintiff in accordance with this rule.

In this opinion the other judges concurred.