CASE 80—PETITION ORDINARY—JANUARY 29.

## Campbellsville Lumber Company v. Bradlee & Wiggins.

APPEAL FROM TAYLOR CIRCUIT COURT.

1. DISSOLUTION OF PARTNERSHIP—ASSIGNMENT OF CONTRACT.—Where upon the dissolution of a firm one of two partners assigned to the other his interest in a contract for the purchase of lumber, without the consent of the seller, the contract was not thereby rendered unenforcable, and the assignee has the right to maintain an action against the seller to recover damages for breach of contract, the firm being joined as plaintiffs.

2. SALES OF PERSONAL PROPERTY—MEASURE OF DAMAGES.—Where contracts for the sale of chattels are broken by the vendor failing to deliver the property according to the terms of the bargain, the measuse of damages, as a general rule, is the difference between the contract price and the value of the article at the time when and place where it should have been delivered, with interest. But this rule does not govern where its application would change the contract actually made, or contravene intention of the parties. Therefore, where the vendor knows his chattels are being purchased for resale at a particular place he should be held to have contemplated as a probable result of his failure or refusal to deliver according to the contract, a recovery by the purchaser of the difference between the contract price and market value at such place of resale, less cost of transportation.

This modification of the general rule is applied in this action by the purchaser of lumber to recover damages of the seller for breach of contract, it appearing from the evidence that the seller knew the purchaser was a firm engaged in dealing in lumber in Boston, Mass., and that it was to be shipped direct to that place for resale; and the jury could not have been misled by an instruction telling them that the measure of damages was the difference between the contract price and the value of such lumber "in the markets where plaintiff traded," less cost of transportation, as Boston was manifestly the market referred to, evidence being heard as to market value of the lumber there.

S. A. RUSSELL FOR APPELLANT.

1. The contract was not assignable without the consent of appellant. (5 Lawson's Rights, Remedies and Practice, sec. 2572; Gen. Stats., p. 303, sec. 6; 3 Bibb, 440; 2 Bibb, 233.)

2. The instructions given permitted the jury to estimate as damages the prospective profits on sales by Wiggins in Boston and other markets. This was error. The lumber was to be delivered at Campbellsville, and the difference between the price to be paid and the value of the lumber on the Campbellsville market was the true measure of damages. (Baker v. Mann, 5 Bush, 675; Barrow v. Arnaud 8, Q. B., 604; Gordon v. Norris, 49 N. H., 376; Koch v. Godshaw, 12 Bush, 319; Yoder v. Allen, 2 Bibb, 388; Cole v. Ross, 9 B. M., 394.)

PATTESON, MONTAGUE & COLLINS AND G. W. TOWLES FOR APPELLEES.

1. There can be no reversal except for errors prejudicial to the substantial rights of appellant. (Civil Code, secs. 338 and 756.)

2. It was competent for plaintiffs to prove what profits they would have realized in any of the markets in which they were in the habit of trading, and the court properly refused to confine them to such profits as they might have made by selling in the Campbellsville market.

3. The contract sued on was made by defendant with the plaintiffs Bradlee & Wiggins, and the subsequent dissolution of the firm and the transfer by Bradlee of his interest in the contract to Wiggins did not destroy the right of the firm to enforce the contract.

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

January 31, 1889, was executed a contract between Bradlee & Wiggins, a firm in Boston, Massachusetts, doing business of buying and selling lumber, and the

Campbellsville Lumber Company, a corporation, whereby the former agreed to purchase and the latter to sell twelve cars of dressed poplar door framing during that year at the rate of two cars per month, beginning with June, at twenty dollars per thousand feet, free on board cars at Campbellsville, Kentucky, terms "spot cash." There is on back of the paper a written transfer and assignment by Bradlee of all his right, title and interest in the contract to Wiggins, made April 25, 1889, for expressed consideration of one dollar.

· This action was brought January 22, 1892, by Bradlee & Wiggins, suing for benefit of H. D. Wiggins, and by the latter in his own right, to recover damages of the Campbellsville Lumber Company for breach of that contract, it being stated in the petition that defendant had delivered one car load only of the lumber, which was paid for, and refused to deliver any more, though plaintiffs demanded and were ready and offered to pay therefor on delivery. Verdict and judgment were rendered in favor of plaintiffs for five hundred dollars, and defendant has appealed.

It appears there was executed on the same day, January 31, 1889, a contract of sale and delivery of another lot of lumber of different kind, and recovery for alleged breach of it was also sought in this action. But the court instructed the jury no recovery could be had on that contract, plaintiffs having abated as to it. Nevertheless, one of the grounds for new trial is that the lower court refused to permit defendant to prove the damages sustained by reason of plaintiffs' refusal to receive the lumber described in that contract. But it does not seem to us the court erred in

that respect, because there was no violation of either contract by plaintiffs. Nor does counsel now contend in his brief that ruling was erroneous.

The main, in fact only, excuse pleaded by defendant for refusal to carry out the contract was the transfer by Bradlee of his interest in it to Wiggins, without consent of defendant, whereby, as argued, it became unenforceable.

It seems the transfer was made upon dissolution of the firm of Bradlee & Wiggins, the benefit of that contract falling to the latter in division of assets. But as Bradlee did not, nor could in virtue of either the dissolution or transfer to Wiggins release himself from the undertaking by the firm to pay defendant for the lumber upon delivery, we do not see how the latter was affected, nor upon what principle he could be released from its undertaking. If he was, then dissolution of a partnership would, in all cases, put an end to each mutual or reciprocal contract the firm may have entered into, however profitable or advantageous. But it does really no more take away the rights of individual members under such contracts than it releases him from obligation to perform. It is true, the written assignment did not have effect to divest the firm of Bradlee & Wiggins of the legal title; but that does not prevent a recovery in this action brought by proper parties plaintiff.

The only question about which there need be any discussion is whether the following instruction was properly given: "The court instructs the jury that in arriving at the amount of damages, if any, they will take into consideration the difference between the

contract price and the value of such lumber in the markets where plaintiff traded, less the costs of transportation."

In Sedgwick on Damages, section 734, it is said: "When contracts for the sale of chattels are broken by the vendor failing to deliver the property according to the terms of the bargain, it seems to be well settled, as a general rule, both in England and the United States, that the measure of damages is the difference between the contract price and the market value of the article at the time when and place where it should have been delivered, with interest." And this court has often sanctioned that general rule; but it does not govern when its application would change the contract actually made, or contravene intention of the parties. Therefore, when the vendor knows his chattels are being purchased for resale at a particular place, he should be held to have contemplated, as a probable result of his failure or refusal to deliver according to the contract, a recovery by the purchaser of the difference between the contract price and market value at such place of resale, less cost of transportation; for, generally, he gets the advantage of a ready sale at a cash, and probably enhanced, price, which the purchaser agrees to give upon faith he may, in case of a breach of the contract, recover something more than the difference between the contract price and market value of the property at place of delivery, which, in a case like this, is manifestly no more than mere nominal damages. It being manifest that to make difference between contract price and market value at place of delivery the measure of

damages practically operates to deprive the purchaser
of any redress in very many, and probably majority
of cases, the general rule has been so far relaxed
that inquiry may be made, in fixing damages, as to
price of such property at a neighboring market.  But
that criterion does not always result in complete jus-
tice, and should not be adopted if there is evidence
showing the parties intended and contemplated a
different mode of measuring the damage actually sus-
tained by the purchaser by reason of the failure of the
seller to deliver.

In section 734, Sedgwick on Damages, is this lan-
guage: "If the goods were purchased for resale at
another place, and there is no market at which others
can be procured to send to that place, the difference
between the market price at the place of resale and the
contract price, plus the cost of transportation, may be
recovered.  It would seem that if the place of resale
is not the nearest market, knowledge of the destina-
tion of the goods on the part of the seller should be
proved, as otherwise the loss of the price at the place
of resale would not be a natural consequence."  Modi-
fication of the general rule thus stated is sustained by
cases cited, and this court in Moore v. Brown, 7 Dana,
380, relaxed it upon the ground the seller knew the
corn was purchased for transportation to a distant
market.

The evidence in this case is entirely satisfactory that
the seller knew the purchaser was a firm engaged in
dealing in lumber in Boston, Mass., and that it was to
be shipped direct to that place for resale.  There was
then at Campbellsville no market value of such lum-

ber, in proper sense of that term, because defendant was alone engaged in manufacturing and selling; and to measure the damages fully and fairly, inquiry of the price at a neighborhood market would have to be resorted to. But we see no reason for even thus restricting the investigation, much less right of the court to do so, if the parties to the contract intended the damages should be measured by the difference between contract price and place of resale.

The instruction does not in terms designate a particular place as the one contemplated by the parties; but the jury was not misled nor defendant prejudiced, because Boston was manifestly the place of resale which the parties to the contract had in view, and evidence was heard as to market value of the lumber there.

Judgment affirmed.