[No. 9536. *En Banc.* October 15, 1912.]

GEORGE MEAD et al., *Respondents,* v. JOHN KALBERG et al., *Appellants.*[1]

BONDS—INJUNCTION BONDS—DAMAGES—LOSS OF PROPERTY—RE-MOTE OR SPECULATIVE DAMAGES—ACTIONS—INSTRUCTIONS. Where a temporary injunction was issued restraining the defendants from performing a city contract assigned to them by the plaintiffs, and an injunction bond was given by plaintiffs on appeal to keep the injunction in force, which bond obligated the plaintiffs to pay all costs and damages that may accrue to the defendants by reason of continuing the temporary injunction in force during the pendency of the appeal, it must be held that the parties contemplated any loss of profits and any damages to defendants that might accrue by reason of subcontracts, then in existence and known to the parties by which defendants had sublet the work, such profits not being too remote or speculative; hence, in a subsequent action on the injunction bond, the jury is properly instructed that it may take

[1]Reported in 127 Pac. 185.

the subcontracts into consideration as tending to prove damages by loss of profits that could have been made on the contract.

BONDS—INJUNCTION BOND—LIABILITY OF PRINCIPAL. Recovery on an injunction bond obligating the plaintiffs and surety to pay all costs and damages that may accrue to the defendants by reason of continuing the injunction in force cannot be objected to as subjecting the surety to a greater liability than that of the principal, since the statute makes the assumption of the liability by the principal a condition precedent to the continuance of the injunction.

BONDS—INJUNCTION BONDS—PLEADING—ACTION—COMPLAINT. In an action upon an injunction bond, the proceedings leading up to the injunction and judgment in the former action are relevant and may be pleaded in the complaint.

JUDGMENT—RES JUDICATA—PARTIES—BONDS—SURETIES ON BOND OF PARTY. Matters determined on a former appeal are *res judicata* in an action by defendants against the plaintiffs and their surety on an injunction bond given in the former action.

PLEADING—ADMISSIONS—ISSUES AND INSTRUCTIONS—OFFSET FOR ADMITTED NOTE. Where, in an action on an injunction bond, the complaint admitted the existence of a $3,000 note due to the defendants as an offset to the damages alleged in the sum of $13,000, and the reply to the counterclaim on the note alleged that the note had long since been paid, the pleadings, while confusing, constitute a mutual admission that there has been no actual payment of the note; hence instructions on the subject are prejudicially erroneous, where the jury were told that the burden of proving payment of the note was upon the plaintiffs, that if they found damages, they could deduct therefrom the amount due on the note, but if not satisfied that the plaintiff is entitled to recover, and that the note was not paid, they must find for the defendant for the amount due on the note; since the instructions should have been framed to allow defendant an offset or judgment for the amount due on the note, upon any verdict rendered.

Appeal from a judgment of the superior court for King county, Main, J., entered December 2, 1910, upon the verdict of a jury rendered in favor of the plaintiffs, in an action on bonds given on appeal. Reversed.

*John S. Jurey* and *James B. Murphy*, for appellants.

*McClure & McClure, Edwin C. Ewing*, and *Jas. A. Snoddy*, for respondents.

ELLIS, J.—This is an action upon the appeal bond, the supersedeas bond, and the bond continuing in force the temporary injunction, in the case of *Kalberg v. Meade*, 50 Wash. 268, 97 Pac. 59. There was a verdict and judgment for the plaintiffs. The defendants, Kalberg & Company and the surety company, have appealed.

The complaint alleges, that the appellants Kalberg & Company entered into a contract with the city of Seattle for the performance of certain street improvement work; that they assigned the contract to the respondents in consideration of the execution and delivery of their interest-bearing note for $3,000; that the respondents commenced work; that the appellants Kalberg & Company ejected and dispossessed them and procured a temporary injunction preventing them from prosecuting the work; that the injunction was dissolved; that the appellants Kalberg & Company appealed from the order dissolving the temporary injunction, and gave an appeal bond in the sum of $200, a supersedeas bond in the sum of $10,000, and a bond in like sum to continue the temporary injunction in force; that the judgment was affirmed upon appeal; that the appellants Kalberg & Company completed the contract pending the appeal, and that they received the bonds and warrants from the city to the full extent of the contract price.

It is further alleged that the judgment appealed from and superseded directed the appellants Kalberg & Company to assign and deliver to the respondents all bonds and warrants received by them from the city for and on account of any work performed by them under the contract; that they received bonds and warrants to the extent of $48,000; that respondents, after the affirmance of the judgment, demanded an assignment and delivery of the bonds and warrants, or in the alternative that the appellants Kalberg & Company pay to them $13,050.17 damages by reason of the appeal; that the appellants Kalberg & Company refused either to deliver the bonds and warrants or to pay the damages; that

respondents could have completed the contract for $34,-950.35; that the appellants Kalberg & Company are entitled to a deduction of the $3,000 note, less a note of $180 made by Kalberg & Company in favor of the respondents; that by reason of the premises, the respondents are damaged in the sum of $13,050.17; and that, upon the surrender and cancellation of the notes, the net amount due to the respondents is $10,107.97. These matters are all admitted, except the amount of the bonds and warrants received and the damages claimed. The appellants assert that the respondents could not have performed the contract for the price the city had agreed to pay, and consequently they were not damaged. The contract between the city and Kalberg & Company, the assignment to the respondents, the appeal bond, the supersedeas bond, and the bond to continue the temporary injunction in force, are attached to and made parts of the complaint.

After the assignments of the contract by Kalberg & Company to the respondents, and shortly before the latter commenced work under the assignment, the respondents sublet a part of the work on terms which if performed by the subcontractors would have left a profit to the respondents. These subcontracts, not being then in existence, were not within the contemplation of the appellants when the original city contract was assigned. They were, however, in existence and in process of performance and known to the appellants when the bonds were given. Over the objection of the appellants, the subcontracts were admitted in evidence. The court, after instructing the jury that the measure of damages was the difference between what it would have cost the respondents to perform the work and the fair market value of the bonds and warrants paid to the appellants for the performance of the work, further instructed that, in determining what it would have cost the respondents to perform the contract, it could consider the subcontracts, if it found that they were made and that they would have been performed by

the subcontractors; that the law presumes that they were made in good faith and with the intention of being performed; that they are not conclusive that they would have been carried out or that the work could have been done for the price agreed upon; that they were circumstances to be considered, and that the jury should give them such weight as it thought they deserved "as tending to show or prove the main issue in the case, viz., would plaintiffs have performed their work at a profit."

The appellants contend that the subcontracts were not admissible as evidence, and that the court erred in instructing the jury that it might consider them in determining what the work would have cost the respondents. The respondents earnestly insist that, the bonds having been given with knowledge of the subcontracts, they were competent evidence, and that the instructions correctly stated the law. The condition of the appeal bond is that the bond shall be void if the appellants shall "pay all costs and damages that may be awarded against them on the said appeal or on the dismissal thereof," not exceeding the sum of $200. The condition of the supersedeas bond, so far as here material, is that the bond shall be inoperative if the appellants "shall and will pay all costs and damages that may be awarded against them on the said appeal or on the dismissal thereof, and further shall and will satisfy and perform the judgment and decree appealed from in case it shall be affirmed, and any judgment or order which the said supreme court may render or make, or order to be rendered or made, by the said superior court." The condition of the bond to continue the injunction in force is that it shall be void "if the said appellants shall pay to the said respondents all costs and damages that may be adjudged against the said appellants on the said appeal, and all costs and damages that may accrue to the respondents by reason of said temporary injunction remaining in force during the pendency of the said appeal." The several bonds were given in compliance with the provisions of the statute, Rem. & Bal.

Code, §§ 1722, 1723. The law as to the admissibility or inadmissibility of subcontracts or other subordinate contracts, or evidence of other special circumstances enhancing damages in actions upon breach of contract on the issue of loss of profits, is well settled in accordance with the following rules:

"As a general rule a breach of the original contract will not entitle the plaintiff to recover as damages the gains or profits of collateral enterprises or subcontracts into which he has been induced to enter, such profits or gains being entirely too speculative and contingent and not the natural and probable consequence of the original breach. Where, however, the knowledge of the subcontract is within the contemplation of the parties when the original contract is made, and is known to have been made in reference thereto, another rule exists and the anticipated gains or profits may be recovered." 13 Cyc. 55, 56.

Both of these rules are recognized, and the first one is exemplified and applied, in the leading cases of *Hadley v. Baxendale*, 9 Exch. 341, and *Masterton v. Mayor etc. of Brooklyn*, 7 Hill 61, 42 Am. Dec. 38. Examples of the application and grounds of the second rule may be found in: *Booth v. Spuyten Duyvil Rolling Mill Co.*, 60 N. Y. 487; *Hubbard v. Rowell*, 51 Conn. 423; *Jordan, Marsh & Co. v. Patterson*, 67 Conn. 473, 35 Atl. 521; *Robinson & Co. v. Hyer Bros.*, 35 Fla. 544, 17 South. 745; *Messmore v. New York Shot & Lead Co.*, 40 N. Y. 422; *Campbellsville Lumber Co. v. Bradlee*, 96 Ky. 494, 29 S. W. 313; *Lewis v. Roundtree*, 79 N. C. 122, 28 Am. Rep. 309; *Sedro Veneer Co. v. Kwapil*, 62 Wash. 385, 113 Pac. 1100.

It is obvious that, in cases where the last mentioned rule would apply, the instruction as given by the court would be proper. It may be conceded that, if this were a suit simply for damages for breach of the original contract of assignment or upon the supersedeas bond alone, the first of the above rules would apply, because the subcontracts were not in contemplation of the appellants when the contract of assignment

was made, and the supersedeas bond by its terms does not enlarge the liability undertaken in that contract.

The vice of the appellants' contention, as it seems to us, is found in the apparent assumption that the bond continuing the injunction in force was given to preserve the *status quo* as of the date of the original contract of assignment; whereas, it was intended to preserve the status as it existed when the bond was given. The injunction bond continued a new status not contemplated by the original contract. The parties must, therefore, be held to have contemplated every element of that new status. The bond should, therefore, be construed as contemplating everything in the situation of the parties of which both parties were then cognizant. While in each of the bonds the appellants obligate themselves to pay all costs and damages that may be adjudged against them on the appeal, the bond continuing the injunction contains the further obligation to pay "all costs and damages that may accrue to the respondents by reason of said temporary injunction remaining in force during the pendency of said appeal." Such is the statutory condition of the injunction bond. By the very terms of the statute it is imposed as a condition to the continuing of the injunction in force that there be an undertaking to answer for all damages resulting from that continuance, in addition to those resulting from the breach of the original contract or from the original cause of action. If the injunction bond has not this additional force, it is a useless thing. It would secure nothing not secured by the supersedeas bond. The injunction would be continued without penalty on the one hand and without redress on the other, however wrongful its issuance or oppressive its effect. Ordinarily, as we have seen, subcontracts cannot be considered, not because their loss causes no damage, but because not in contemplation of the parties at the time of their entering into the original contract. But when the bond is given, the parties must be held to contemplate every then known condition or circumstance which may re-

sult in damage "by reason of the injunction remaining in force," which would not be too remote or speculative to be the basis of damage in any case. The subcontracts were therefore admissible, not to enhance the damages recoverable upon the original contract and already created by the breach, but as tending to prove damages arising from the continuing injunction and on the independent undertaking to pay such damages. This is not penalizing the appellants for taking the appeal, but merely requiring them to answer for the damages which would not have accrued from the appeal but did accrue from the continuance of the injunction, and for which the respondents would have no other remedy.

Nor does it subject the surety to a greater liability than that of the principal. The statute itself makes the assumption of an added liability by the principal, commensurate with the added damage which the respondents may suffer by reason of the injunction remaining in force, a condition precedent to its so remaining in force. The surety is subjected to no greater liability. Whether the loss of the performance of the subcontracts by the continuance of the injunction in force was a damage by loss of profits was dependent upon the same facts and presumptions as would enter into the determination of that question in any case where they could be considered at all. These facts and presumptions were submitted to the jury in the instructions as given. We find no error in the admission of the subcontracts, or in the instruction as to their qualified probative force.

Two cases are cited which on first impression might seem to sustain the appellants' contention. The case of *Whitney v. Allen*, 21 Cal. 234, seems to us not applicable to the facts here. In that case the appeal by the defendant was from a decree foreclosing a mortgage. The supersedeas bond, among other things, was conditioned that, if the judgment should be affirmed, the defendant would pay to the plaintiff the value of the use and occupation of the premises pending the appeal. The judgment was affirmed, but there having

been no sale of the property, it was held in a suit brought upon the bond that there could be no recovery for the use and occupation of the property between the appeal and affirmance. This was upon the express ground that the decree of foreclosure gave no right of possession or to the rents and profits, prior to a sale and deed on the foreclosure. The court, therefore, held that the statutory provision in the supersedeas bond in regard to use and occupation must be understood as referring to those cases in which the creditor is entitled to the value of the use. The distinction seems plain. It was to hold a possession which had been adjudged wrongful that the injunction bond in the case before us was given. In the other case, *Stearns v. Brown,* 1 Pick. 530, it was sought to hold an administrator liable for interest upon money held by him pending an appeal which he had prosecuted under a statute requiring an appellant, whether plaintiff or defendant, to give security for "intervening damages." It was held that this would not constitute intervening damages, since if he had made use or profit of the money during the pendency of the appeal, he might be cited in the probate court to account for it as for any other money received, regardless of any appeal. We fail to see any real similarity between that case and the case before us.

Certain paragraphs of the complaint detail the proceedings leading up to, and the dissolution of, the temporary injunction and the judgment in the former action. A motion of the appellants to strike these paragraphs as irrelevant was denied. Error is predicated upon this ruling. While the facts are probably pleaded with unnecessary detail, the matter is pertinent to the issue.

For a second affirmative defense the appellants alleged, that the respondents procured the assignment of the contract by falsely representing that their note for $3,000 was of that value; that their bond was insufficient; and that the respondents breached the contract by failing to perform. This matter was stricken on the motion of the respondents, and

error is suggested upon this ruling. These questions were determined adversely to the appellants in the first case, and are *res adjudicata*. *Kalberg v. Meade*, 50 Wash. 268, 97 Pac. 59.

It is alleged in the complaint, that the appellants Kalberg & Company are the owners of the $3,000 note given as consideration for the assignment of the city contract; that they are entitled to a deduction of the principal of the note, less the $180 note, from the amount due to respondents. This is not denied. In the first separate answer and counterclaim, the appellants Kalberg & Company allege the making of the $3,000 note and its nonpayment. In the reply the respondents deny the nonpayment, and allege affirmatively that both principal and interest of the note have long since been paid. On this question the court instructed the jury that the burden was upon the respondents to prove the payment of the note; that if they found that the respondents could have performed the contract at a profit, they should determine the amount of the profits and deduct the principal and interest due upon the note, and that "if, however, you shall not be satisfied by a fair preponderance of the evidence that the plaintiff is entitled to recover, and that said note has not been paid, then you will find the verdict for the defendants for the amount of said note plus interest thereon at eight per cent per annum, commencing nine months after its date." While the pleadings are somewhat cloudy as to the status of the $3,000 note, we think, when construed together, they constitute a mutual admission that there has been no actual payment of this note, and that the principal sum should be deducted from any verdict in favor of the respondents. This being true, the jury should have been instructed to the effect that, if it should find that there would have been no profit to the respondents, the verdict should be for the appellants Kalberg & Company for the amount of the principal and interest of the $3,000 note, less the $180 note; and if it should find that the profits were less than the principal and

interest of the note, the verdict should be for the appellants Kalberg & Company for the difference; and if it should find the profits greater than the principal and interest of the note, the verdict should be for the respondents for the difference. In either case, the $180 note should be added to the amount found due to the respondents as an offset against the larger note. If we correctly understand the record, the appellants Kalberg & Company gave the respondents their note for $180 as a rebate for the first nine months' interest on the $3,000, and there does not seem to be any claim that this note has ever been paid.

The respondents' contention that no interest should be allowed on the $3,000 is not tenable. It expressly provides for the payment of interest. The instructions of the court on this question appear to us to be contradictory and confusing, and we have no means of knowing what effect they had upon the verdict. Other errors suggested by the appellants are technical and without merit. Excepting as hereinbefore indicated, the instructions correctly state the law of the case.

For the error noted, the judgment is reversed, with directions to grant a new trial.

MOUNT, C. J., GOSE, PARKER, CROW, CHADWICK, and MORRIS, JJ., concur.

MAIN, J., took no part.