## Log Mountain Coal Company v. White Oak Coal Company.

(Decided March 26, 1915.)

### Appeal from Jefferson Circuit Court
### (Common Pleas Branch, Third Division).

1. Damages—Sales—Failure of Seller to Perform Contract—Measure of Damages.—In a contract for the sale and delivery of personal property, the damages which the buyer is entitled to receive for a failure of the seller to perform his contract, by the delivery of the article, is the difference between the contract price, and its market value at the time and place of delivery, if there is any market price for it at such place, and if not, then in place of the market price, its actual value, at such time and place.

2. Damages—Sale and Delivery of Personal Property.—Where there is a contract for the sale and delivery of personal property, and at the time of the making of the contract, the seller knew that the inducement to make the contract, on the part of the buyer, was to resell it for profits, and the resale of it for profits was in contemplation of the parties at the time of the making of the contract, and the seller violates his contract, by failing to deliver the goods, at the time and place specified, and the buyer tries to minimize his loss, if any, by purchasing other goods of similar kind and character to supply the place of those which he failed to receive under the contract, then the damages to which the buyer is entitled, is the difference between the contract price and the market price, at the time and place of delivery, but, if by diligent effort, the buyer is unable to purchase other goods to supply the place of the ones he failed to receive under the contract, then his damages are the profits which he would have realized from a resale of the goods.

3. Damages—Sales—Failure of Seller to Deliver Goods.—A buyer of personal property, in order to entitle himself to damages for a failure of the seller to deliver the goods, other than nominal damages, must make diligent efforts to minimize his loss, but he is not required to buy other goods, at such prices, in order to replace the ones failed to be received, that it would result in a loss to his business.

A. C. VANWINKLE and R. T. IRVINE for appellant.

EDWARDS, OGDEN & PEAK for appellee.

Opinion of the Court by Judge Hurt—Reversing.

On the first day of September, 1911, the appellant, which is a Virginia corporation, engaged in the mining of coals at Chenoa, and at other places in that vicinity, entered into a contract with the appellee, which is a West Virginia corporation, engaged in the business of buying and selling coals, with its principal office and place of business at Louisville, Ky. By the terms of this contract, the appellant agreed to ship to the appellee approximately twenty-five tons of 2″ ″ nut and slack coals, during the twelve months, that should follow after the making of the contract. The shipments were to be made at the rate of two cars per day, and not an average shipment of two cars per day, without the consent of both parties; and it was further agreed, that the coals purchased under the contract was to have preference over any contract entered into before and during the life of the contract. The railroad weights as ascertained by the initial line, were to govern the settlements. The shipments were to be made over the Louisville & Nashville Railroad; and it was further agreed, that it was mutually acknowledged, that the intent of the contract was not to bind either party to a failure to perform or modified performance by reason of matters beyond the control of the party in default, but that the material should be shipped by the seller and accepted by the buyer, as per delivery specified, so far as the labor, the physical conditions at the respective plants, and the ability of the carriers, would permit, regardless of the conditions arising from over contracting, or changes in market value during the life of the contract, which was to expire on the first day of September, 1912. The price to be paid by the appellee to the appellant was fifty cents per ton, free on board cars at the mines at Chenoa, Ky., and was to be paid on the 15th day of each month, for all shipments made in the preceding month. The place of delivery was at Chenoa, Ky., free on board the cars. The contract seems to have been performed without any complaint from either party, until January 1st, 1912. During the months of January, February, March, April, and May, the appellant failed to ship to the appellee two car loads of coals per day, as provided for in the contract. Appellee failed to pay on the 15th day of March for the coals received by it, during the month of February, claiming that appellant was failing to per-

form its contract in making the shipments of coals. Some negotiations went on between the parties by letters and telegrams, in which appellee insisted on the appellant shipping the required amount of coals, and appellant giving reasons for its failure to do so. On the 16th day of April, however, appellee paid for all the coals, which it had received, up to the first day of April, and during the months of April and May, in order, as it claimed, to assist appellant in furnishing the 2" " nut and slack coals provided for in the contract, it, also, contracted for other coals, which were shipped to it. On the 15th day of May, appellee failed to pay for the coals received by it in April, and upon demand, notified appellant, that it had credited the amount it owed for the coals, to appellant upon the damages appellee had sustained, by reason of appellant's failure to perform the contract. Thereafter, appellant did not ship any more coals, under the contract, to appellee, and after the expiration of the time of the contract, brought this suit to recover of appellee the sum of $831.44, the amount appellee owed it for coals. The appellee answered, in which it denied its liability, and by a counter-claim, sought to recover of appellant $6,671.00 in damages, for the alleged violation of the contract by appellant, and claimed that appellant, under its contract, had failed to ship to it 12,467 tons of coals, during the life of the contract, and that by reason of same, it had been compelled to buy other coals in the market for its customers, of the kind and quality that the plaintiff had agreed in the contract, to supply it with, and to pay a higher price for it than the contract price, and that it was unable to supply all of its customers, and had lost the profits, that it would have made on the 12,467 tons of coals, that the plaintiff had failed to deliver to it. This counter-claim was traversed by reply. Upon the trial of the case before the court and jury, the court directed the jury to find for appellant the $831.44, which appellee owed it for the coals shipped to it, and to find for appellee such damages as it had suffered by the breach of the contract by appellant, and to subtract the smaller amount from the larger, and to find a verdict for the difference in favor of whichever party the balance fell to. The jury found a verdict for appellee in the sum of $100.00, and judgment was accordingly rendered thereon. This was a finding for appellee of $931.00 in damages, upon its counter-claim. Appellant filed grounds for a new trial, and its

motion and grounds for a new trial being overruled, it has appealed to this court.

There is evidence, in the record, tending to show, that the appellant failed to ship to the appellee, coals, which, by the terms of the contract, it was obligated to ship to it, during the months of January, February, March, April, May, June, July, and August. There is, also, evidence for the appellant tending to prove that it did ship to the appellee for the months of January, February, March, April, and half of May, substantially all the coals, which appellee was entitled to receive under the contract, and the amount of the shipments up to this time presents a clear issue, as to whether appellant shipped to appellee all the coals which it was entitled to receive under the contract. After the 16th day of May, however, the appellant wholly failed to ship any coals to appellee, and the reason given for it is, that it refused to pay for the coals received in April and May. The proof for appellee fails to show that it had any contracts, as alleged by it, by which it was obligated to furnish coals to other parties, or that it purchased any coals for the purpose of meeting any contracts which it had. The proof, however, does tend to show, that up to the 16th day of May, it had endeavored to purchase coals in the open market to meet the demands of its customers, and its regular trade in coals and did purchase some coals and supplied with them to some extent, the coals which it had failed to receive from appellant under the contract; but after the month of April, the proof shows, by the admissions of its own witnesses, that it made no effort in any respect to buy coals to supply those which the appellant, under its contract, had failed to ship to it. The proof does show, that there was an active market in the city of Louisville for coals, of the kind and character embraced in the contract, during the entire period of its existence, and that the price fluctuated from time to time; and it, also, tends to show that appellee was unable to buy coals to supply the place of all of those, which it had failed to receive under its contract, but upon this subject, the evidence is conflicting, but there is no conflict in the evidence, as to appellee's failure to attempt to purchase other coals to supply the place of those, which it had failed to receive under the contract, after May 16th.

The appellant complains of the action of the trial court in allowing proof to be made of the market value of the character of coals, embraced in the contract, in the city of Louisville, during the months from January, 1912, to September, 1912; and, also, complains that the court erred to its prejudice in giving instructions number 2 and 3 to the jury; and refusing instructions 1, 2, 3, 4, 5, and 6, offered in writing by it.

As to the instructions offered, we see no error in the court in refusing to give them, except the seventh instruction offered by appellant, and no error in the instructions given except Nos. 2 and 3. Instruction number 2, given by the court, is as follows: "By the contract filed with plaintiff's petition, the plaintiff, the Log Mountain Coal Co., agreed to deliver to the defendant, White Oak Coal Co., two carloads 2″ ″ nut and slack coal per day, unless prevented by labor troubles, accidents, car supply, and other causes beyond its control, for which the White Oak Coal Co. was to pay the plaintiff fifty cents per ton, net to the mines, and if the jury shall believe from the evidence that the plaintiff failed to deliver to the defendant two carloads of 2″ ″ nut and slack coal per day, every day except Sundays, from January, 1912, on days when there were no labor troubles, failure of car supply, or other causes beyond the plaintiff's control, you should find for the White Oak Coal Co. in damages, at this, if any, at the contract price of said coal, to-wit: Fifty cents per ton, and the actual value of said coal F. O. B. cars, Chenoa, on such coal as it failed to deliver and the profits it would have realized. The whole award not to exceed the sum of $6,771.00, the amount claimed in the counter-claim, subject, however, to the following: No. 3. It was the duty of the White Oak Coal Co., when it realized that the plaintiff, Log Mountain Coal Co., was not making deliveries in accordance with the contract, to have minimized its demand by going into the open market and supplying such deficiency, by purchasing coal of the same grade and character, for the best price obtainable; and if the jury shall believe from the evidence, that it was possible at the time, that such deficiency occurred, to have purchased the same or similar coal in the open market, or any part of it, and the defendant failed to do so, then to the extent the White Oak Coal Co. failed to protect itself, the law is for the Log Mountain Coal Co. on the counter-claim, and the jury should so find."

The rule which ordinarily prevails is, that where the seller breaches his contract by failing to make delivery of articles sold, at the time and place agreed upon for delivery, the measure of damages to which the buyer is entitled, is the difference between the contract price and the market price of the same character and quality of goods, at the time and place, of delivery. If there is no market price for goods of the character and quality contracted for by the buyer, at the time and place of the delivery, the true value of the goods may be sought, instead of the market price, by the best evidence which is possible. Parry Mfg. Co. v. Lyon, 111 Ky., 613; Denhard v. Hurst, 111 Ky., 546; Miles v. Miller, 12 Bush, 134; Cole v. Ross, 9 B. M., 393; Tradewater Coal Co. v. Lee, et al., 68 S. W., 400; Belcher v. Sellards, 43 S. W., 676.

If there is no market price at the time and place of delivery, the market price at other places, subtracting from it the expenses of transportation to the place of shipment, may be used as a basis for computation; and if the place of delivery and the place to which the article is to be transported are different, the market price at the place to which it is to be transported, less the cost of transportation of it to that place, may be resorted to, to fix the market price at the time and place of delivery. Campbellsville Lumber Co. v. Bradlee & Wiggins, 96 Ky., 494.

It seems that under instruction number two, *supra,* the jury was directed, that the measure of damages was fifty cents a ton, and the actual value of the articles, at the place of delivery, and whatever profits might have arisen to the appellee by the sale of the article. This was certainly an erroneous conclusion, as to the proper damages, and must have arisen from some oversight. Unless there are some specific circumstances which govern a contract of this kind, the difference between the contract price and the market price, is all the damages to which the buyer is entitled, and where the goods are to be transported, as in the case, at bar, this must be credited by the freights from the place of delivery to the place of destination. The delivery in this case being by installments, the rule as to the extent of the damages would apply to each installment. If the market price was only equal to or less than the contract price at the time and place of delivery, then the buyer could suffer no damages by a failure to deliver, except such as are

nominal. The appellant, however, when making this contract, was obliged to know the purpose, which the appellee had in making it, and the inducement for it to make it. The evidence shows, without contradiction, that the appellee knew that the appellant was making the purchase of the coals embraced in the contract for the purpose of reselling them for the profits which might arise from it. The rule in this jurisidction is, that where the profits, from the resale, of an article purchased, are in contemplation of the parties, when the contract is made, and induced the making of the contract, such profits, where the seller fails to deliver the goods, and the buyer, by the exercise of reasonable diligence and efforts, is not able to obtain other goods of similar character and quality to supply the place of that which the seller failed to deliver, the buyer is entitled to recover, as the measure of damages which he has suffered, the profits which he would have realized from a resale of the goods, if the seller had performed his contract in delivering them to him. Bates Machine Co. v. Norton Iron Works, 113 Ky., 372; Bluegrass Cordage Co. v. Luthy & Co., 98 Ky., 583; New Market Co. v. Embry, 48 S. W., 980; Owensboro Harrison Tel. Co. v. Wisdom, 62 S. W., 529; Louisville & C. Packet Co. v. Buttorf, 77 S. W., 920; Gunther & Bro. v. Taylor, 23 R., 536; Smith & Nixon v. Perry, 13 R., 683; Currie Fertilizer Co. v. Krish, 24 R., 2471.

Under a contract for the sale and delivery of goods, and the seller fails to perform his contract, by delivering the goods, at the time and place of delivery, and the buyer goes into the market and purchases other goods to supply the place of those, which he has failed to receive under the contract, the measure of damages, to which he is entitled, is the difference between the contract price and the market price of the goods, of similar kind and character, at the time and place of delivery, and he would not be entitled to recover anything for the profits, which he might make by a resale, because, having purchased goods of similar kind and character to substitute for those which he failed to receive under the contract, he would acquire the profits, if any, upon a resale of the goods bought by him to substitute for the ones, which he failed to receive under the contract. If having failed to receive the goods to which he was entitled under the contract, and having made reasonable and diligent efforts to obtain other goods of similar kind

and character to supply the place of those which he had failed to receive under his contract, the only damages to which he could be entitled, in that state of case, would be the profits which he could have realized from a resale of the goods. This is self-evident, because not having received the goods under the contract, they cost him nothing, and the only loss which he has sustained, would be the loss of the profits which he could have realized. There is evidence in the case, at bar, which tends to show that the appellee bought coals of similar kind and character to supply the place of some portion of those, which it failed to receive under the contract, but for other coals, which he failed to receive under the contract, he was not able, by reasonably diligent efforts to purchase coals to supply the place of. The coals, by the terms of the contract, were to be delivered in installments, and after the 16th day of May, the appellee's manager shows, by his own admissions, that no kind of effort was made to minimize its loss, if any, under the contract, by purchasing or attempting to purchase other coals to supply any deficiency which it suffered by the failure of appellee to deliver coals according to its contract. The court below was, in error, by so instructing the jury, that it could find damages for appellee, on account of the failure of any shipments of coal to be made after the 16th day of May, because the appellee, by its witnesses, not only shows that it made no effort to buy any other coals, and further, that it did not expect to receive any under the contract after that time, from the appellant. The court should have by proper instructions told the jury, that of the coals which appellant failed, under the contract, to ship to appellee after the first of January, to the extent that appellee purchased other coals to supply the place of those, which it failed to receive under the contract, that the damages to which appellee was entitled, was the difference between the contract price at the time and place of delivery, according to the contract, and the market price at that time, at such place, to be credited by the cost of transportation from that place to the City of Louisville; and the damages to which appellee was entitled for the failure on the part of appellant to deliver the coals, to the extent that appellee, after reasonably diligent efforts to purchase other coals of similar kind and character to supply the place of those, which it failed to receive, and was not able to buy other coals instead, was the profits, which it

would have realized by a resale of such coals, provided, that at the time of the making of the contract, the resale of the coals and the profits to be made therefrom, were within the contemplation of the parties to the contract, and the inducement for the purchase of same.

If upon another trial, the evidence is the same as upon the trial had, the court, also, should give the seventh instruction, which was offered by the appellant on the trial below, which was to the effect, that after the 16th day of May, the appellant was not entitled to any damages, either for difference in price or for profits upon the shipments to be made under the contract, after that time.

The court was, also, in error, by assuming in instruction number three, that the appellant was not making deliveries of the coals in accordance with the contract. As to whether it was doing so or not, was an issue upon the pleadings and in the evidence, and should have been submitted to the jury under proper instructions. In instruction number three, given by the court, it should have said to the jury, that it was the duty of the appellee to minimize its loss, if any, instead of its demand, and where it provided, that, if it was possible for appellee to have purchased coals, instead of those which it failed to receive under the contract, it should be said, that if it was unable to do so, after diligent efforts; and neither, do we think, that it would have been required to have purchased coals to supply that, which it failed to receive under the contract, at such an advanced price, that upon the resale of same, it would have resulted in a loss to its business.

Under the issues in the case, it was not error in the court to permit proof of the market value of the coals in controversy in the City of Louisville, because it was necessary for the appellee to show what that was, as a basis for its claim for the loss of profits. The profits would be the difference between the contract price at the time and place of delivery, and the price for which it could have sold the coals upon the market, less the freight and expenses of handling.

For the reasons indicated, the judgment appealed from is, therefore, reversed, and this cause remanded with directions to proceed in conformity with this opinion.