## Log Mountain Coal Company v. White Oak Coal Company.

(Decided October 16, 1917.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, Third Division).

1. Appeal and Error—Second Appeal—Former Opinion Law of Case.—The former opinion is the law of the case on a second appeal, and if the trial court followed the directions of the former opinion, the judgment must be affirmed.

2. Contracts—Measure of Damages for Breach of.—When the vendor knows that the personal property he sells is purchased for resale at a particular place, the measure of damages the vendee is entitled to recover when the vendor fails to deliver the property is the difference between the contract price and market value at place of resale, less cost of transportation.

GARNETT & VAN WINKLE and R. T. IRVINE for appellant.

EDWARD BLOOMFIELD and EDWARDS, OGDEN & PEAK for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

In the opinion on a former appeal by the present appellant, which may be found in 163 Ky. 842, the judgment was reversed for errors in the instructions and

the case remanded for a new trial. On the second trial, from which this appeal is prosecuted, there was again a judgment against the appellant, and it asks a reversal upon the ground that the trial court did not follow the opinion in the instructions given to the jury. This is the only question on this appeal. The former opinion is the law of this case, and if the trial court followed the direction of the former opinion, the judgment must be affirmed; if it did not, it should be reversed.

Briefly stated, the facts out of which the controversy arose are these: The Log Mountain Co. brought suit against the White Oak Co. to recover $831.44, the amount alleged to be due it on account of coal sold and delivered to the White Oak Co.

In its answer the White Oak Co. admitted the correctness of the account, but by way of counter-claim set up that the Log Mountain Co. had failed to deliver it during the months of January to August, inclusive, in 1912, certain coal it had contracted to deliver, and that on account of such failure it was compelled to buy coal to fill contracts with its customers, and owing to this condition it sustained damages in the sum of $6,771.00.

On a trial of the case before a jury there was a verdict for the White Oak Co. on the counter-claim for $911.93, the effect of this being that the Log Mountain Co. was defeated in its efforts to collect the account sued on, and in addition a judgment was had against it for the amount named.

The trial court, being of the opinion that according to the directions of this court on a former appeal the White Oak Co. was entitled to recover, for any coal the Log Mountain Co. failed to deliver to it under the contract, the difference between the contract price and the market value of this coal in Louisville, Ky., which was the place of resale, instructed the jury that if they believed from the evidence that the Log Mountain Co. failed to deliver the coal contracted for they "should find for the defendant on its counter-claim in damages the difference, if any, between the contract price of said coal plus the freight rate to Louisville of 75 cents per ton, and the market price of said coal in Louisville at the respective dates when said coal should have been received there in ordinary course of business."

They were further instructed that if they believed "from the evidence that the Log Mountain Coal Co. was not making deliveries of coal to the White Oak Coal Co.

in accordance with the contract, then it was the duty of the White Oak Coal Co. to have minimized its loss from such failure, if any there was, by going into the open market to supply such deficiency, if any, by purchasing coals of similar grade and character for the best price obtainable, if the same could have been purchased in the open market at Louisville at a price which would have permitted the White Oak Coal Co. to have resold same at a profit in its business." And that if "it was possible for the White Oak Coal Co. to have supplied such deficiencies, or any part of the same, and at a price which would have permitted the White Oak Coal Co. to have resold such coal at a profit in its business by the exercise of diligent efforts on its part to these ends, and it failed to do so, then as to the extent which the White Oak Coal Co. failed to protect itself by the exercise of diligent efforts to that end, if it was able to protect itself by diligent efforts, then the law is for the Log Mountain Coal Co. on the counter-claim, and the jury should so find."

The following instruction offered by counsel for the Log Mountain Co. was refused: "It was the duty of the White Oak Coal Co. when it realized that the Log Mountain Coal Co. was not making deliveries in accordance with the contract, if any such failure there was on the part of said Log Mountain Coal Co., to have minimized its loss, if any, by going into the open market and supplying such deficiency, if any, by purchasing coal of like grade and character agreed to be furnished by the Log Mountain Coal Co., at the best price obtainable; and if the jury believe from the evidence that the White Oak Coal Co. failed to make reasonable, diligent efforts to purchase other coals of similar kind and character to supply the place of those which it failed to receive, if any, they should find against it on its counter-claim." And also offered an instruction telling the jury, in substance, that if the Log Mountain Co. broke its contract, the measure of damage to which the White Oak Co. was entitled was the difference between the contract price of the coal contracted to be delivered at Chenoa, Ky., and the market value of the same character and quality of coal in the district where the mines of the Log Mountain Coal Co. were located at the time it failed to deliver the coal, but that if the jury believed from the evidence that there was no market value for the kind and quality of coal called for in the contract in the district in which the mines of the Log Mountain Coal Co. were located, then

the jury should find for the White Oak Coal Co. the difference between the contract price and the true value of such or similar coals; or, if there was no market value for the kind and quality of coal called for in the contract in the district where the mines were located, then the market price at Louisville for the same kind and quality of coal less the cost of transportation from Chenoa to Louisville, and the costs of hauling, was the measure of damages.

It will be observed that there is material difference on the subject of the measure of damages between the instructions given by the court and those offered by counsel for the Log Mountain Co. This difference, as will readily be seen, consists in the fact that the court told the jury that the measure of damage to which the White Oak Co. was entitled was the difference, if any, between the contract price of the coal, plus the freight rate to Louisville, and the market price of such coal in Louisville at the time when it should have been, but was not, delivered, while under the instructions offered by counsel for the Log Mountain Co., and refused, the jury were told that the measure of damages to which the White Oak Co. was entitled was the difference between the contract price and the market value of the same character and quality of coal in the district where the mines of the Log Mountain Co. were located.

It also appears that on the trial of the case the Log Mountain Co. offered to introduce evidence tending to show that coal of the same character and quality as it had agreed to furnish to the White Oak Co. and failed to furnish, could have been purchased, in the open market in the Middlesboro coal district, where the mines of the Log Mountain Co. were located, at prices substantially similar to the prices at which the Log Mountain Co. had contracted to furnish the coal. But this evidence was rejected by the trial judge, and properly so if his view of the law of the case as given to the jury was correct. So we again repeat that the only question on this appeal is, did the trial judge, in giving the instructions, follow the rule laid down in the former opinion?

In the former opinion, the court, after setting out the contract between the parties by which the Log Mountain Co. agreed to deliver to the White Oak Co. on board cars at its mines at Chenoa, Ky., a stipulated quantity of coal each day for transportation to the White Oak Co. at its place of business in Louisville, Ky., where

it was engaged in selling coal; and after laying down
general rules controlling the measure of damage in cases
in which there has been a breach of contract by the
seller; and after criticising certain instructions given by
the court on the first trial, said:

"The court should have by proper instructions told
the jury, that of the coals which appellant failed, under
the contract to ship to appellee after the first of January,
to the extent that appellee purchased other coals to sup-
ply the place of those which it failed to receive under the
contract, that the damages to which appellee was en-
titled was the difference between the contract price at
the time and place of delivery, according to the contract,
and the market price at that time, at such place, to be
credited by the cost of transportation from that place to
the city of Louisville; and the damages to which appellee
was entitled for the failure on the part of appellant to
deliver the coals, to the extent that appellee, after rea-
sonably diligent efforts to purchase other coals of similar
kind and character to supply the place of those which it
failed to receive, and was not able to buy other coals in-
stead, was the profits which it would have realized by a
resale of such coals, provided, that at the time of the mak-
ing of the contract, the resale of the coals and the profits
to be made therefrom were within the contemplation of
the parties to the contract and the inducement for the
purchase of same."

Keeping in mind the material fact that when this con-
tract was made it was within the contemplation of the
parties and, in fact, well understood by the Log Mountain
Co., that the White Oak Co. was purchasing the coal for
the purpose of reselling it on the Louisville market, we
think the instruction as to the measure of damage given
by the lower court was correct and followed the rule laid
down in the opinion.

In Campbellsville Lumber Co. v. Bradlee & Wiggins,
96 Ky. 494, the court quoted with approval the following
from Sedgwick on Damages, sec. 734: "Therefore, when
the vendor knows his chattels are being purchased for
resale at a particular place, he should be held to have
contemplated, as a probable result of his failure or re-
fusal to deliver according to the contract, a recovery by
the purchaser of the difference between the contract
price and market value of such place of resale, less cost
of transportation; for, generally, he gets the advantage
of a ready sale at a cash, and probably enhanced, price,

which the purchaser agrees to give upon faith, that he may, in case of a breach of the contract, recover something more than the difference between the contract price and market value of the property at place of delivery, which, in a case like this, is manifestly no more than mere nominal damages. It being manifest that to make difference between contract price and market value at place of delivery the measure of damages practically operates to deprive the purchaser of any redress in very many, and probably a majority of cases, the general rule has been so far relaxed that inquiry may be made, in fixing damages, as to the price of such property at a neighboring market. But that criterion does not always result in complete justice, and should not be adopted if there is evidence showing the parties intended and contemplated a different mode of measuring the damage actually sustained by the purchaser by reason of the failure of the seller to deliver.'' To the same effect is Denhard v. Hurst, 111 Ky. 546.

Wherefore, the judgment is affirmed.